In re the ADOPTION OF
C.A.H., Minor Child.

G.B. & M.B., Appellants,

v.

C.K. & S.K., Respondents.

No. WD 49825.

Missouri Court of Appeals,
Western District.

June 13, 1995.

Rehearing Denied Aug. 1, 1995.

Gerald McGonagle, Kansas City, for appellants.

Dale Nathan Godfrey, Kansas City, GAL, for respondent C.A.H.

Allan Hallquist, Kansas City, for respondents C.K. & S.K.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

G.B. and M.B., the maternal grandparents of C.A.H., appeal the trial court's granting temporary custody of C.A.H. to his paternal grandparents, C.K. and S.K.[1] They complain that the trial court erred in admitting evidence although it later excluded it. They also claim that C.K. and S.K. did not present sufficient evidence to support the court's order, the court misstated a witness' testimony in its findings, and the court erred in making its ruling before reviewing C.K.'s medical and military records. We affirm the judgment of the trial court.

This conflict began shortly after the circuit court terminated the parental rights of C.A.H.'s natural parents in April 1993. C.A.H., born on March 6, 1991, lived with C.K. and S.K. after September 1991. Before C.A.H. began living with them, they frequently visited C.A.H., cared for him in their home several days a week and most weekends, and bought formula and other baby supplies for him. S.K. grew increasingly concerned about the type of care her son and C.A.H.'s mother were giving the child. C.K.

---

1. We recognize that M.B. and C.K. are step-grandparents of C.A.H. For the ease of the reader, we will refer to them as "grandparents."

and S.K. repeatedly asked C.A.H.'s parents to clean their apartment, and S.K. telephoned the Division of Family Services hotline three times to report her suspicions of abusive and neglectful behavior towards C.A.H. by his parents. C.K. and S.K. took C.A.H. to the hospital after making the third hotline call and then took C.A.H. to their home.

After the court terminated the parental rights of C.A.H.'s parents, C.A.H. continued to live with C.K. and S.K. The maternal grandparents, G.B. and M.B.; petitioned the court to adopt C.A.H. A brief time later, C.K. and S.K. filed a petition for transfer of custody and adoption of C.A.H. The court heard evidence and arguments in this case on five days between November 1993 and May 1994. On May 19, 1994, the court issued its order granting temporary custody to C.K. and S.K.

In their first point, G.B. and M.B. complain that the trial court erred in admitting into evidence the report and testimony of Dr. Rosalyn Inniss, a psychiatrist. At the guardian ad litem's request, the court ordered the parties to submit to psychological and psychiatric evaluations. The guardian ad litem chose Inniss to perform the psychiatric evaluations. In her report and testimony, Inniss included a recommendation that the court place C.A.H. with C.K. and S.K. Inniss testified that she prepared her report in fulfillment of the court's directive to conduct a psychiatric evaluation of G.B. and C.K. Initially, the court overruled G.B.'s and M.B.'s objection that Inniss' report and testimony did not contain a psychiatric diagnosis and that her adoption recommendation was outside the court's order. Seven days later, the court sustained the objection and excluded Inniss' conclusions and adoption recommendation after finding that Inniss had not conducted the "traditional mental status examination" ordered by the court. G.B. and M.B. argue that the trial court's failure to promptly exclude Inniss' report and testimony prejudiced them because the court and the

guardian ad litem, who cited Inniss' recommendation in his report, were "immutably influenced" by such evidence.

■ We give substantial deference to the trial court regarding the admissibility of evidence. *In the Interest of R.G.*, 885 S.W.2d 757, 766 (Mo.App.1994). We will interfere with the trial court's ruling only upon a clear showing that the court abused its discretion. *Id.* In a case tried without a jury, erroneous admissions of evidence mandate reversal only when sufficient, competent evidence does not support the order. *Nunn v. Nunn,* 644 S.W.2d 370, 373 (Mo.App.1982). We presume that a court bases its decision upon only relevant and competent evidence. *N.K.M. v. L.E.M.,* 606 S.W.2d 179, 187 (Mo. App.1980).

■ The trial court did not abuse its discretion. The court excluded Inniss' conclusion and recommendation when the hearing resumed seven days after the initial admission of Inniss' testimony and report.[2] In its order, the court specifically said that it was disregarding Inniss' conclusions concerning custody.

■ Further, substantial evidence other than Inniss' recommendation supported the court's order. In assessing the sufficiency of the evidence, we examine the evidence and its inferences in the light most favorable to the trial court's order. *Long v. Long,* 771 S.W.2d 837, 839 (Mo.App.1989). The testimony of C.K. and S.K. reflected their extensive involvement in C.A.H.'s life. They put their concern for C.A.H.'s welfare above their relationship with S.K.'s son (C.A.H.'s father) by calling the DFS hotline three times to report possible child abuse. They willingly took C.A.H. into their home and participated in the agency investigations and court proceedings.

G.B. testified that he knew that C.A.H.'s parents were neglecting him and had known a few months before C.A.H. began living with C.K. and S.K. that C.A.H.'s parents were

2. G.B. and M.B. claim that the court admitted Inniss' testimony and report in November 1993 and then excluded her conclusions and recommendation five months later. We find nothing in the record indicating that Inniss testified in No-

vember. The record indicates that Inniss testified on April 28, 1994, and the guardian ad litem offered her report into evidence the same day. The court then excluded her conclusions and recommendation on May 5, 1994.

abusing him, but he did not report the neglect or abuse to authorities. Neither G.B. nor M.B. participated in the court and agency proceedings because their former attorney advised them that it could jeopardize their relationship with G.B.'s daughter (C.A.H.'s mother). G.B. also testified that he and M.B. were in the process of moving to St. Louis.

Two DFS social workers testified that C.A.H. appeared to be bonded with C.K. and S.K. and that they appeared to have a loving, parent-child relationship. One of them described C.A.H. as "happy, healthy, growing, well nourished, and well nurtured" in C.K.'s and S.K.'s home. Another licensed clinical social worker conducted a bonding assessment and found that C.A.H. had a bond with all of the grandparents, but the bond with C.K. was very strong. She also testified that she believed that separating C.A.H. from C.K. and moving to St. Louis would be detrimental to C.A.H.'s interests. The guardian ad litem recommended placement with C.K. and S.K.

■ G.B. and M.B. also complain that the failure to perform a psychiatric evaluation of C.K. mandates reversal because the court had ordered the evaluation and because § 453.070, RSMo 1994, requires it. We disagree. Section 453.070 requires a full investigation, not necessarily a psychiatric evaluation. The court could have determined whether it needed to order another psychiatric evaluation after it excluded portions of Inniss' report and testimony. Obviously, the court believed that the investigation was complete and another evaluation was not needed. Sufficient evidence supports this conclusion. G.B.'s and M.B.'s first point is without merit.

In their next point, G.B. and M.B. argue that C.K. and S.K. lacked credibility, so their testimony and the experts' conclusions based on it did not provide the court with substantial evidence to render an order in their favor. Indeed, in its order, the trial court found that C.K., S.K., and G.B. were "not credible on specific issues relating to past events."

■ We have repeatedly said that the trial court is in the best position to judge credibility, and it may believe all, part or none of a witness' testimony. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). In this case, the court believed part of C.K.'s, S.K.'s and G.B.'s testimony, and it believed the testimony of some of the experts over the testimony of other experts. This constituted sufficient evidence to support the court's order.

G.B.'s and M.B.'s next point is that the trial court erred in its characterization of the testimony of James Roberts, the court-appointed adoption investigator. Roberts testified that C.A.H.'s best interests would be served by residing with G.B. and M.B. On cross-examination, Roberts said that he was not aware that G.B. and M.B. were moving to St. Louis. G.B. and M.B. argue that the court misstated Roberts' testimony in its order by finding that Roberts "conceded that had he known such information [about the move to St. Louis] his opinion might have been influenced thereby." They argue that because the court listed the move to St. Louis as an emphasized factor in the court's decision, the court's alleged misstatement concerning Roberts' feelings about the move constituted error.

The court did not misstate Roberts' testimony. C.K.'s and S.K.'s attorney asked Roberts on cross-examination, "Would it concern you if [G.B.] is planning to move to St. Louis with [M.B.] to follow in seven or eight months? Would it concern you in the extent of providing a home for [C.A.H.]?" Roberts answered, "Yes." On redirect, Roberts' testified that a move to St. Louis would not change his recommendation.

■ We defer to the trial court's assessment of witnesses' credibility and accept the trial court's resolution of conflicting evidence. *W.E.F. v. C.J.F.*, 793 S.W.2d 446, 451 (Mo. App.1990). Roberts' testimony that the move to St. Louis would "concern" him is consistent with the court's finding that the move would "influence" him. Further, sufficient evidence supported the court's finding that G.B.'s and M.B.'s move to St. Louis would be detrimental to C.A.H. and the court's order granting temporary custody of C.A.H. to C.K. and S.K.

In their final point, G.B. and M.B. argue that the trial court erred by not reviewing all of C.K.'s military and medical records prior to making its decision. On April 14, 1994, a family court judge issued an order to the Director of National Personnel Records Center to provide all of C.K.'s medical and military records to the parties. On April 28, 1994, the court admitted those records into evidence as one of G.B.'s and M.B.'s exhibits. The court concluded the hearing on May 5, 1994, and issued its order on May 19, 1994.

The records center sent more medical records in July 1994, two months after the trial court had issued its order granting temporary custody of C.A.H. G.B. and M.B. filed a request for rehearing to consider the additional medical records. The trial court denied the request. The court also denied G.B.'s and M.B.'s motion to set aside the order denying rehearing. G.B. and M.B. complain that the trial court should have granted a rehearing because the records would have shown that C.K. had mental problems while he was in the military. They also request that we consider the additional records pursuant to Rule 73.01(c)(3).

Rule 73.01(c)(3) does not authorize us to consider the additional medical records because they were not offered into evidence at trial. Further, G.B. and M.B. will have the opportunity to offer the records into evidence at the adoption proceeding. The court's order of May 19, 1995, granted only the temporary custody to C.K. and S.K. The trial court properly denied G.B.'s and M.B.'s request for rehearing and their motion to set aside the order denying rehearing.

All concur.