**In the Interest of I.B.**

**Juvenile Officer, Respondent,**

**v.**

**D.M.B. (Mother), Defendant,**

**and**

**G.J., III (Father), Appellant.**

**No. WD 58517.**

Missouri Court of Appeals,
Western District.

June 19, 2001.

Melissa McAllister, Columbia, for Respondent.

G.J., III, Milton, FL, Appellant, pro se.

Joel P. Kidwell, Columbia, Guardian ad litem.

Before EDWIN H. SMITH, P.J., and SMART and HOWARD, JJ.

HOWARD, Judge.

Natural father, G.J., appeals from the judgment of the Circuit Court of Boone County terminating his parental rights to I.B., a minor child. He raises six points on appeal. We affirm the circuit court's judgment in part and reverse and remand in part.

## Background

This matter has a long procedural background. It began in 1996 and continued until the final judgment terminating G.J.'s parental rights was issued in April of 2000.

I.B. was born to G.J. (father) and D.B. (mother)[1] on October 10, 1986. On March 5, 1996, I.B. was found to be in the jurisdiction of the court under § 211.031.1(1) RSMo 1994. The court then issued an Order of Protective Custody, placing I.B. into immediate protective custody of the Division of Family Services (DFS) for placement in foster care. The next day, an amended petition including allegations against father was filed. On May 28, 1996, father appeared. He orally moved for a continuance and requested court-appointed counsel. After finding father to be indigent, the court appointed John Smith to represent father. Father thereafter denied the allegations of abuse and neglect of I.B., so the case was set on the contested hearing docket.

On September 27, 1996, after father's request for continuance was denied as untimely, I.B. was made a ward of the court. The court ordered father to undergo a psychiatric evaluation, to undergo a drug and alcohol assessment, to follow all treatment recommendations, and to participate in individual and family therapy. The court also ordered that I.B. was to remain in out-of-home placement. It then set the case for final disposition on November 25, 1996.

In the meantime, father moved to amend the September 27th judgment, claiming that several of the amended peti-

---

1. Mother does not appeal the termination of her parental rights to I.B.

tion's allegations against him were not supported by any evidence. The court overruled his motion on November 25, 1996, and entered an order continuing its jurisdiction over the child and maintaining DFS's custody and supervision. It also ordered that I.B. would remain in foster care. The court, which had received a report from I.B.'s counselor concerning I.B.'s feelings for his father, further found that visits from father "would impair and endanger [I.B.'s] emotional well-being." The court again ordered father to undergo the psychiatric and alcohol and drug evaluations it had previously ordered. The case was continued to June 23, 1997, for a dispositional review.

On May 23, 1997, the court granted Mr. Smith's motion to withdraw as father's court-appointed counsel, due to his inability to contact father and his departure from private practice.

At the June 23, 1997, dispositional review hearing, the court ordered that father be granted supervised visitation with I.B. upon verification of completion of the court-ordered psychological and drug and alcohol evaluations and recommended treatment. Father did not appear. The case was set for December 27, 1997.

After a continuance was granted to the juvenile officer, another dispositional review was set for January 28, 1998. Father appeared at the hearing. He again requested court-appointed counsel, and the court appointed Betty Wilson to represent father. No further proceedings were held because father was without counsel. The court thereafter granted Ms. Wilson's motion to continue the February 23, 1998, hearing date to allow her time to prepare. Father still had not obtained the court-ordered evaluations; he continued to maintain that he did not need them.

On April 21, 1998, the juvenile officer filed a petition for termination of father's parental rights.

On April 27, 1998, Ms. Wilson, at father's request, moved to withdraw due to "irreparable philosophical differences" about his case. Father did not appear. The court notified the parties that father filed a *pro se* motion for continuance to obtain private counsel. The court also informed Ms. Wilson that father's motion had "some unkind words to say about [Ms. Wilson] that [the court did not] intend to read in the record." The court granted Ms. Wilson leave to withdraw and continued the case to June 22, 1998.

Father again failed to appear at the June 22, 1998, hearing, and the court continued it for hearing to August 24, 1998.

At the August 24, 1998, hearing, the juvenile officer informed the court that father had not yet been personally served with the petition for termination. The court informed the parties that father had filed another *pro se* motion for continuance, which he again failed to notice to the other parties. After receiving testimony concerning father "effectively avoiding service," the court granted permission to serve father by publication. The court also appointed Jean Goldstein to represent father and ordered a continuance to allow time for service on father.

At the next hearing, on November 23, 1998, Ms. Goldstein appeared with father. Father, through counsel, denied all allegations of the petition for termination except those relating to mother and paternity. The cause was set for trial.

On January 15, 1999, the case was continued upon agreement of the parties. The court set the matter to be heard on October 19, 1999. Father again did not appear and instead filed a *pro se* motion for continuance without notice to other

parties. The court informed Ms. Goldstein, who did appear, that father had "unpleasant things" to say about her in his motion. Nonetheless, Ms. Goldstein proceeded to argue father's motion for visitation on his behalf. However, the court was unable to proceed on that motion because, due to a miscommunication, the child was not present in court. The parties agreed that it would not be a good idea to pull I.B. out of school as suggested by the court. Thus, father's motion for visitation was continued to November 22, 1999.

Father again did not appear at the November 22, 1999, hearing. The court informed the parties that it had received another *pro se* motion for continuance by fax from father and had a message that father's car had broken down. Father again failed to notice the other parties. Ms. Goldstein informed the court that father wanted her to request a continuance, but she had refused. The court overruled father's motion for continuance, and the hearing proceeded on father's motion for visitation. I.B. testified, as did his counselor. The trial court denied father's motion for visitation and placed the case on the trial setting docket.

On January 7, 2000, and again on March 17, 2000, father filed *pro se* motions "for extraordinary relief modifying the court's November 22, 1999, order denying his motion for visitation." He also filed *pro se* motions for continuance on January 7, 2000, January 10, 2000, and again on February 7, 2000, requesting the case be continued for at least four to six months. Ms. Goldstein moved to withdraw from representation on March 17, 2000, citing father's allegations of ineffective assistance of counsel and father's activities, which she had counseled as imprudent in her representation. On March 21, 2000, the court set father's motion to modify for a hearing on April 14, 2000. On March 27, 2000, the court granted Ms. Goldstein leave to withdraw.

On April 13, 2000, one day before the hearing, and again on April 14, 2000, father filed two more *pro se* motions for continuance. Father indicated that he was not pleased with Ms. Goldstein's services and that he desired to proceed *pro se*. His motion suggested that father thought Ms. Goldstein was still appointed to represent him. Thus, at the commencement of the hearing on April 14, 2000, the court summoned the court clerk to determine whether notice of Ms. Goldstein's withdrawal had been provided to father. The clerk indicated that the notice was sent to the last known address provided by father as required. After the parties determined that they had received different versions of father's *pro se* motions for continuance and all parties opposed such motions, the court overruled father's motion for continuance because the case had already been continued for so long. Father also attempted to file an amended answer by fax on April 14, 2000. The court would not admit the answer because father did not have leave of court to file it. The court also denied multiple other *pro se* pleadings filed by father.

Thus, after these repeated continuances and delays, on April 14, 2000, the final hearing was held on the petition for termination. Father was not present. The juvenile officer elicited testimony from I.B.'s DFS caseworker and from his counselor. After the court judicially noticed the judgments and findings in the case as well as correspondence from father, the court entered its judgment terminating father's parental rights. This appeal followed.

### Standard of Review

■ Unless the judgment terminating father's parental rights is not supported by

substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law, we will affirm. *In the Interest of T.A.S.*, 32 S.W.3d 804, 808 (Mo. App. W.D.2000). We review all facts and reasonable inferences arising therefrom in a light most favorable to the trial court's judgment. *Id.* We defer to the trial court on witness credibility and conflicting evidence issues. *Id.* Thus, we will reverse "only when we firmly believe that the judgment is wrong." *In the Interest of C.M.D.*, 18 S.W.3d 556, 560 (Mo.App. W.D. 2000).

## Point I

In his first point on appeal, father alleges that the trial court erred in allowing Ms. Goldstein, his third court-appointed attorney, to withdraw two weeks prior to the termination of parental rights hearing and in subsequently failing to appoint new counsel to represent him at the termination hearing as required by § 211.462.2 RSMo 1994. He also alleges that the trial court abused its discretion in failing to grant his motion for continuance.

■ Section 211.462.2 provides in relevant part that in all actions to terminate parental rights "[t]he parent ... of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court. Notice of this provision shall be contained in the summons." Due to the gravity of a proceeding to terminate parental rights, the terms of § 211.462.2 are to be strictly applied, and a court's failure to appoint counsel without an affirmative waiver of those rights has been held to be a reversible error. *In re the Interest of J.D.*, 34 S.W.3d 432, 434 (Mo.App. W.D.2000). Nonetheless, § 211.462.2 does not establish an absolute right to counsel. *Id.* Instead, it requires the court to appoint counsel only when: (1) the parent requests court-appointed counsel; and (2) the parent demonstrates that he or she is indigent and therefore is financially unable to employ counsel. *Id.*

As set forth above, the court appointed Mr. Smith and subsequently Ms. Wilson to represent father after father requested counsel and the court found him to be indigent. When the court granted Ms. Wilson's motion to withdraw on August 24, 1998, it appointed Ms. Goldstein to represent father, this time on its own initiative. Father now complains that the court erred in also allowing Ms. Goldstein to withdraw and in not appointing new counsel to represent him.

■ *Withdrawal of Counsel:* We first consider his claim that the court erred in allowing Ms. Goldstein to withdraw. On April 5, 1999, nearly eight months after she was appointed, Ms. Goldstein filed a motion to withdraw, citing "irreconcilable differences" with father and father's request that she withdraw. The court denied her motion, and she proceeded with her representation of father. As set forth above, just prior to the hearing on October 19, 1999, father faxed a *pro se* motion for continuance to the court. In his motion, he set forth several "irreconcilable differences" he had not yet resolved with Ms. Goldstein. Neither Ms. Goldstein nor the other parties had received copies of father's motion. Ms. Goldstein orally informed the court that "he tried to fire me once, but I was not allowed to withdraw. And I don't mind being fired." The court questioned Ms. Goldstein concerning her contact with father and father's whereabouts. The court also noted that the matter had been set since August 2, 1999, so the motion was untimely. Ms. Goldstein was not allowed to withdraw at that time either.

Meanwhile, father continued to file *pro se* motions with the court. On March 17, 2000, Ms. Goldstein moved to withdraw for the third time, citing father's allegations of ineffective assistance of counsel and father's activities, which she had counseled as imprudent in her representation. On March 27, 2000, after a brief hearing, the court granted her leave to withdraw. On March 29, 2000, notice of the withdrawal was mailed to father's last known address. Father admits in his brief that he received the notice of her withdrawal at least a week before the hearing. Yet, in his multiple *pro se* motions filed the day before and day of the April 14, 2000, termination hearing, father again complained of Ms. Goldstein's representation and requested that he be allowed to proceed *pro se*. Based upon father's own actions, we fail to see how he could have been prejudiced by Ms. Goldstein's withdrawal when he repeatedly voiced his disapproval of her representation, did not appear at the hearings and requested that she withdraw. All three of his court-appointed attorneys indicated that father repeatedly failed to cooperate with their representation. Moreover, he indicated that he wished to proceed *pro se*. The trial court did not err in allowing her to withdraw.

◼ *Appointment of New Counsel:* Father also argues that the trial court erred in failing to appoint new counsel to represent him after Ms. Goldstein was allowed to withdraw. However, father never requested appointment of new counsel as required to trigger the requirements of § 211.462.2, *supra*, and as he had done two times in the past. Even if he had requested counsel, he failed to appear at the hearing, so the court could not determine whether he was indigent either. He also requested in his motions filed just before the final hearing that he be allowed to proceed *pro se*, not that he wished for the court to appoint additional counsel. Father's own actions and inaction defeat his claim that the trial court erred in not appointing new counsel to represent him after it granted Ms. Goldstein leave to withdraw.

*Motion for Continuance:* With regard to his claim that the court erred in denying his motion for continuance, Rule 65.03 states in relevant part that "[a]n application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally." It does not guarantee, as suggested by father, a right to a continuance if such a written motion is filed. Rule 44.01(d) further provides in relevant part that "[a] written motion ... and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing, unless a different period is fixed by law or court rule or by order of the court."

◼ We review the trial court's denial of father's motion for continuance for abuse of discretion. *In the Interest of M.P.W.*, 983 S.W.2d 593, 599 (Mo.App. W.D.1999). We find no abuse of discretion in this case. Before considering father's motion, the trial court confirmed that notice of Ms. Goldstein's withdrawal was mailed on March 29, 2000, to father's last known address. Despite father's own admission that he became aware of Ms. Goldstein's withdrawal at least a week before the hearing, he did not file his *pro se* motion for continuance until the day before and again just hours before the final termination hearing. As pointed out by the trial court in overruling father's motion for continuance, "[the case] was set for hearing in November of '98, January of '99,

May of '99, July of '99, October of '99, and January of 2000."

Father notoriously filed last-minute *pro se* motions by fax with the court, most of the time without noticing the other parties as required. Although the court had been generous in granting previous continuances, a continuance at that point would have inconvenienced the other parties and participants, who were all ready to proceed. The court did not abuse its discretion in denying father's request for a continuance.

Point I is denied.

## Point II

Father's second point on appeal alleges that he did not receive effective assistance of counsel under § 211.462.2. He claims that Ms. Goldstein's actions were so deficient as to deprive him of a meaningful hearing and defense.

■ "In Missouri, the test for ineffective assistance of counsel in termination of parental rights cases is whether the attorney was effective in providing his or her client with a meaningful hearing based on the record." *M.P.W.*, 983 S.W.2d at 600.

■ Ms. Goldstein was appointed to represent father on October 24, 1998. During her representation: she denied the relevant allegations against father in the First Amended Petition, and the case was set on the trial docket; she appeared at each proceeding, even when father failed to appear; and she propounded interrogatories and a request for production of documents upon the juvenile officer on father's behalf. Father claims in his reply brief that Ms. Goldstein filed the discovery documents only after he "threatened to personally file" his own. However, we found no support for his bare assertions in the record on appeal. "Generally, appellate courts will not consider evidence outside of the record on appeal." *8182 Maryland Assoc., Ltd. P'ship v. Sheehan*, 14 S.W.3d 576, 587 (Mo. banc 2000). The record indicates that Ms. Goldstein also requested and received court authorization to incur deposition costs, although it is not clear whether or not one was ever taken. Ms. Goldstein actively sought visitation rights for father, despite his refusal to obtain the court-ordered evaluations that would have allowed for supervised visits. This included a hearing on the motion for visitation, for which father did not appear, in which she questioned I.B. concerning his feelings for his father and cross-examined I.B.'s therapist. She continued to represent father despite his repeated *pro se* filings of motions for continuance and other matters without her knowledge, even when the court informed her that the motions had some "unkind words" to say about her. In fact, when the court granted Ms. Goldstein's motion to withdraw on March 27, 2000, the juvenile officer informed the court, "just for the record, I can tell you Jean Goldstein has given us a run for our money on this case and has kept us busy on this case. So she certainly is working."

■ Father's argument relates to Ms. Goldstein's purported failure to make objections or motions regarding what he claims to be a "voluminous amount of records and reports containing hearsay statements, unsupported by any documentation," her failure to call witnesses on his behalf, her failure to depose certain out-of-state witnesses, and her "refus[al] to acknowledge or introduce medical reports and police reports which prove inconclusively [sic] that the allegations in the First Amended Petition ... [were] improper and should be stricken from the record." These matters primarily relate to the April 14, 2000, termination hearing, at which Ms. Goldstein did not represent him because

she was given leave to withdraw two weeks prior on March 27, 2000. The actions or inaction of Ms. Goldstein that father now complains of were largely matters of trial strategy. When father complained of her representation in his *pro se* motions, Ms. Goldstein informed the court that father often requested that she take action that she felt would be imprudent in her representation of him. "An attorney will not be found to be ineffective based on trial strategy, even if that strategy later proves to be ineffective." *M.P.W.,* 983 S.W.2d at 600. As set forth above, the trial court did not err in permitting Ms. Goldstein to withdraw prior to the termination hearing. Her representation up to the point of her withdrawal was not ineffective; nothing she did or did not do denied father a meaningful hearing.

Point II is denied.

### Point III

■■■■ In his third point on appeal, father contends that the trial court erred in allowing Vicky Riney, I.B.'s DFS caseworker, and Chris Lawrence, I.B.'s therapist, to testify concerning I.B.'s statements to them about his father. He alleges that such statements were inadmissible hearsay.

In order to preserve his allegation of error for review at the appellate level, father must have presented the issue to the trial court for its consideration. *In the Interest of C.C.,* 32 S.W.3d 824, 830 (Mo. App. W.D.2000). As pointed out by respondent, father raises this issue for the first time on appeal. Father failed to appear at the final termination hearing and

therefore did not object when the trial court allegedly considered the inadmissible evidence. Therefore, he has failed to preserve the issue for appellate review. *Id.*

Father attempts to blame his failure to preserve the issue on the fact that his court-appointed counsel was allowed to withdraw two weeks prior to the hearing. As set forth in our discussion of Point I, we reject this argument. The court's actions in allowing Ms. Goldstein to withdraw did not prohibit father from appearing at the hearing. Father had adequate notice of the hearing. Even if his claims that he could not adequately prepare were true, he should have at least appeared for the final hearing date. He cannot place blame for his failure to appear on anyone but himself.

Point III is denied.

### Point IV

In his fourth point on appeal, father alleges that the trial court erred in terminating his parental rights without making the statutorily required findings.

■■■■ Section 211.447.2 RSMo Cum. Supp.1997 [2] provides in relevant part:

> The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer ... if the court finds that the termination is in the best interests of the child *and* when it appears by clear, cogent and convincing evidence that *one or more* of the [six] grounds for termination [enumerated therein] exist.

(Emphasis added.) Evidence is "clear, cogent and convincing" if it "instantly tilts

---

**2.** The legislature amended § 211.447 effective July 1, 1998. In the case now before us, this amendment occurred between the filing of the petition for termination (4–21–98) and the entry of the judgment (4–14–00). The trial court correctly made its findings of fact and

conclusions of law under § 211.447 RSMo Cum.Supp.1997, and we conduct our review of father's appeal under that version of the statute. *T.A.S,* 32 S.W.3d at 808 n. 2. Thus, statutory references are to RSMo Cum.Supp. 1997, unless otherwise noted.

the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In the Interest of J.M.*, 815 S.W.2d 97, 101 (Mo.App. W.D.1991). "This test may be met despite the presence of contrary evidence before the court." *In the Interest of J.W.*, 11 S.W.3d 699, 703 (Mo. App. W.D.1999). In addition to finding that one or more of the statutory grounds for termination is satisfied, the trial court must also determine whether termination is in the child's best interests. *C.M.D.*, 18 S.W.3d at 560.

■ The trial court held that termination of father's parental rights was in I.B.'s best interests. It also found that the grounds for termination in § 211.447.2(3) were satisfied. Section 211.447.2(3), states that the trial court may terminate parental rights if:

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, *the court shall consider and make findings on the following:*

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care.

(Emphasis added.) "Strict and literal compliance with the statutory requirements is necessary in termination of parental rights cases." *T.A.S.*, 32 S.W.3d at 810. Thus, as emphasized above, the court must make specific findings on each of § 211.447.2(3)'s factors set forth in subsections (a)-(d). Even if a factor is not relevant, the court must state that and give a reason why the factor is not relevant. *Id.*

In this case, the initial paragraph of § 211.447.2(3) and subsection (b) are satisfied by a near-verbatim recital in the trial court's judgment. The court's findings under these portions of the statute are sufficient. At issue is whether the trial court made the required findings under subsections (a), (c), and (d).

As to § 211.447.2(3), subsection (a), the trial court found that father failed to participate in a psychiatric evaluation, in a drug/alcohol assessment, and in individual therapy as ordered by the court. Although this does not track the language of the statute, we find it to be minimally sufficient to establish that the trial court made the required finding regarding "the

terms of the social service plan entered into by [father] and the division and the extent to which the parties have made progress in complying with those terms." § 211.447.2(3)(a). In addition, as this court has consistently held, "a social service plan is no longer mandatory, nor will its absence require a reversal in a termination of parental rights case." *T.A.S.*, 32 S.W.3d at 813.

■ With regard to § 211.447.2(3) subsections (c) and (d), the trial court did not make the necessary findings. Although it does not appear that evidence could be presented on these factors due to father's refusal to obtain the court-ordered psychiatric and drug and alcohol evaluations, the trial court is still statutorily mandated to make a finding on each of these factors; even if they were not relevant to the decision to terminate father's parental rights, the court should state why the given factor is not relevant. *T.A.S.*, 32 S.W.3d at 810. In support of her contention that the court's failure to address these findings was harmless error, respondent relies on *Massey v. Labor and Industrial Relations Commission of Missouri*, 740 S.W.2d 680, 682 (Mo.App. E.D.1987), which held that "[u]nder the circumstances of [that] case, it [was] unnecessary to remand for a finding that [was] obvious from the record." Given the strict and literal compliance with the statutory requirements necessary in termination of parental rights cases, this holding is not applicable to our case, so we reject respondent's argument.

■ This does not mean we hold that termination was not proper. "Although the court is required to consider and make

findings as to all four conditions or acts [under § 211.447.2(3), subsections (a)–(d) ], the proof of one is sufficient for termination." *In the Interest of S.C.*, 914 S.W.2d 408, 411 (Mo.App. W.D.1996). Thus, its findings as to § 211.447.2(3), subsection (b), are sufficient to support the trial court's termination of father's parental rights. Nonetheless, the trial court was required to make findings on subsections (c) and (d) as well and is directed to do so on remand.

Additionally, § 211.447.3 requires, "[w]hen considering whether to terminate the parent-child relationship pursuant to subdivision ... (3) ... of subsection 2 of this section, the court shall evaluate and make findings on [seven] factors [enumerated therein], *when appropriate and applicable to the case.*" (Emphasis added.) Father does not challenge the findings under this section, and we find that the trial court properly evaluated and made findings on the appropriate and applicable factors.

Point IV is granted in part and denied in part.

### Point V

■ In his fifth and final point on appeal,[3] father alleges that the trial court's termination of his parental rights was against the weight of the evidence.

■ Pursuant to our standard of review set forth above, we will affirm the trial court's judgment terminating father's parental rights unless we find that it is not supported by substantial evidence, is against the weight of the evidence, or erro-

---

**3.** We note that in his reply brief, father raises for the first time an issue concerning the trial court's error in obtaining and maintaining jurisdiction over I.B. in regards to father because the original petition made no allegations against father. "Issues not raised in an

appellant's opening brief, however, cannot be raised for the first time in the reply brief" and are deemed abandoned. *Decker v. Square D Co.*, 974 S.W.2d 667, 670 n. 2 (Mo.App. W.D. 1998).

neously declares or applies the law. *T.A.S.*, 32 S.W.3d at 808. The juvenile officer bore the burden of proving her case against father by clear, cogent and convincing evidence. *S.C.*, 914 S.W.2d at 411. This burden is met only when the evidence "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *J.M.*, 815 S.W.2d at 101. "This test may be met despite the presence of contrary evidence before the court." *J.W.*, 11 S.W.3d at 703.

 The trial court terminated father's parental rights pursuant to § 211.447.2(3). Father now claims that "the trial court has based its findings on unreliable, unsupported, undocumented, vague allegations which prove to be diametrically opposite to the facts and documentation provided by the father." In support of his contention, father makes reference to several alleged facts and documents that he claims contradict the trial court's findings. As pointed out by respondent, these documents and facts were never introduced to, or admitted by, the trial court at the final termination hearing. In his reply brief, father contends that, as evidenced by the file stamp, several of the documents that he relies on in support of this point and his statement of facts were indeed filed with the court below. However, the mere filing of a document does not place it before the court for purposes of its consideration at the final hearing on the

termination of father's parental rights. We will not consider documents on appeal that were not offered into evidence at the final hearing. *See In re Adoption of C.A.H.*, 901 S.W.2d 285, 289 (Mo.App. W.D.1995), *holding*, under Rule 73.01, that medical records relied on by appellant would not be considered on appeal because they were not offered into evidence at trial.[4]

Father never introduced these documents or facts at the final termination hearing, nor did the trial court admit them into evidence. If father had documents or evidence he wished for the trial court, and subsequently this court, to consider on his behalf, he should have appeared at the final hearing. His failure to appear at the final hearing and thus his failure to adduce any evidence on his behalf, including these documents, leaves us nothing further to review. In addition, father's arguments on this point relate primarily to credibility and conflicting evidence issues which are matters on which we defer to the trial court. *T.A.S.*, 32 S.W.3d at 808.

At the final hearing, the juvenile officer requested that the trial court take judicial notice of certain findings the court had previously made. Receiving no objection, the trial court took notice of its judgments and findings in the case as well as correspondence from father. These findings included in the court's final judgment, which father now complains were against the weight of the evidence, were as follows:[5]

---

**4.** In *Wampler v. Director of Revenue*, 48 S.W.3d 32, 35 (Mo. banc 2001), *quoting Hopkins v. Hopkins*, 664 S.W.2d 273, 274 (Mo. App. E.D.1984), our supreme court held:

> [T]hat a document or record is "admissible" does not mean it is automatically admitted into evidence merely because it has been filed in a case or attached to a pleading.... [P]roponents in ... civil cases [are]

to put into evidence that which the fact finder is asked to consider. The judge is not required to leaf through a file to determine what should be used as evidence. Merely filing a document "does not put it before the court as evidence."

**5.** These findings were taken from the court's judgment and are numbered and lettered as set forth therein.

c. Continuation of the parent-child relationship will greatly diminish the child's prospects for early integration into a stable and permanent home in that[:]

(1) On or about September 27, 1996, this court, after hearing found that:

(a) The juvenile was fearful that his father would hurt him while hitting him;

(b) In March, 1996, the juvenile state [sic] his father punched him in the stomach, hit him with a best [sic], and threw him to the floor;

(c) On or about March 5, 1996, the juvenile's mother indicated that the father is an alcoholic and has a history of becoming violent while intoxicated;

(d) On January 23, 1996, the juvenile's father began home schooling the juvenile, however, the juvenile denies that he was being educated by his father;

(e) The juvenile's father was admitted to Mid-Missouri Mental health Center for irrational behavior after being arrested for trespassing;

(f) On February 4, 1993, deputies form [sic] the Boone County sheriff's Department witnessed a scratch on [T.J.'s] sternum and the collar of her sweatshirt torn and Dr. Charles Atkins, MD observed scratches on the lower back of [T.J.] as well as three scratches in the vaginal canal, all consistent with [T.J.'s] report of being physically and sexually assaulted by the juvenile's father[;]

(g) The juvenile's father has had repeated contact with the Columbia Police Department and the Boone County Sheriff's Department from May 1, 1986, to May 17, 1995.

d. The efforts of the DFS have failed to aid the juveniles [sic] father on a continuing basis in adjusting to circumstances to provide a proper home for the juvenile and additional services are not likely to bring about lasting parental adjustment enabling return of the juvenile within in [sic] an ascertainable period of time in that:

1) The father failed to participate in a psychiatric evaluation as order [sic] by this court;

2) The father failed to participate in a drug/alcohol assessment as ordered by this court;

3) The father failed to participate in individual therapy as order [sic] by this court.

e) [sic] The juvenile's father has only visited the juvenile on one occasion which was supervised and that the court has limited visitation at times due to father's behavior or permitted no visitation.

f) The juvenile's father has demonstrated a significant disinterest and lack of commitment to the juvenile;

g) The juvenile does not have emotional ties to the father.

These findings were sufficient to support the trial court's termination of father's rights and were not against the weight of the evidence presented at the final hearing.

Point V is denied.

### Conclusion

The trial court did not err in allowing father's counsel to withdraw, in not appointing new counsel to represent him, or in denying father's motion for continuance filed just before the final hearing on the juvenile officer's petition to terminate father's parental rights to I.B. Nor was father's counsel, Ms. Goldstein, ineffective in

her representation of father. Father's claim concerning inadmissible hearsay was not properly preserved for review, and termination of father's parental rights was not against the weight of the evidence. Thus, his points I, II, III, and V are denied.

However, father's point IV has merit in part. The trial court erred in failing to make the required statutory findings under § 211.447.2(3), subsections (c) and (d). Therefore, we reverse the trial court's judgment and remand with directions that the trial court enter findings upon the record that address the statutorily required findings under those sections. *In the Interest of B.R.S.*, 937 S.W.2d 773, 775 (Mo.App. W.D.1997).

EDWIN H. SMITH, P.J., and SMART, J., concur.