64 S.W.3d 321 (2001)
In the Interest of C.W. and S.J.W., Plaintiff;
JUVENILE OFFICER, Respondent,
v.
R.F. (Mother); L.W. (Father) Defendant, Appellant.
No. WD 59614.
Missouri Court of Appeals, Western District.
November 6, 2001.
Motion for Rehearing and/or Transfer Denied December 26, 2001.
*322 Kellie W. Ritchie, St. Joseph, for plaintiff, C.W. and S.J.W.
David R. Schmitt, St, Joseph, for respondent Juvenile Officer.
Candace Barnes, St. Joseph, for appellant, R.F.
George Murray, III, St. Joseph, for defendant L.W.
*323 Before SPINDEN, C.J., LOWENSTEIN and EDWIN H. SMITH, J.J.
Motion for Rehearing and/or Transfer to Supreme Court Denied December 26, 2001.
HAROLD L. LOWENSTEIN, Judge.
This is an appeal from a judgment terminating the parental rights of both parents of their two daughters, under the grounds contained in subdivisions (2), (3) and (6) of Section 211.447.4, RSMo 2000.[1] The parents of the two girls were not married. The older child, C.W., was born in January 1991, the younger, S.J.W., was born in August 1992. In April of 2000, when the amended petition for termination was filed, both parents were incarcerated in the Department of Corrections. At the time of the termination hearing (September to October, 2000), both girls, then ages nine and eight, were in the custody of their maternal great-grandmother under the supervision of the Division of Family Services (DFS). The girls had been living with the great-grandmother since 1997. Both parents' rights were terminated in this action, but only R.F. (hereafter Mother) has appealed.
In 1996, L.W. (hereafter Father) repeatedly directed acts of physical abuse against Mother, sometimes in front of the girls, so she obtained an order of full protection against him. In early 1997, Mother allowed Father overnight visitation with his daughters. In February of 1997, Mother was charged with three counts of forgery. The charges stemmed from Mother attempting to cash checks that had been forged by Father. After her arrest, she eventually made bond with money supplied by Father. From the time of Mother's arrest, the girls went to live with their maternal great-grandmother, where they remained at trial. While Mother was still in jail, the children told their custodian of prior physical and sexual abuse from Father, including being subjected to drug usage instigated by Father when Mother allowed the girls to spend a night with him in early 1997. St. Joseph police began an investigation. The children told the police of fondling and attempted intercourse by Father, as well as his allowing his friends to fondle them while in the family house. They also told of his getting them to drink alcohol and injecting them with some sort of substance, thought to be illegal drugs. The children told that Mother laughed and took videos of Father fondling them and then destroyed the tape with a hammer afterwards. Mother admitted that prior to her first term in prison she had an abuse problem with marijuana and had tried methamphetamine, crack and cocaine. One girl also talked of the parents forcing both girls to videotape the parents engaging in sexual relations.
In brief, since her February 1997 arrest, Mother has spent far more time either in jail, prison or halfway houses than she has on the outside. In July of 1997, Mother pleaded guilty to the forgery charges, and after parole from prison, she was repeatedly involved in family fights (with her sister) which resulted in parole violations and returns to prison, and then to a halfway house. Mother, from February 1997 through August of 2000, had limited contact with her children. As noted earlier, the children began living with a relative after the juvenile court found in February of 1998 that Father committed acts of abuse on both girls, while Mother was found to have been incarcerated and unable to care for the children.
In May of 1997, C.W. mentioned that Mother was present during one of the incidents when both children were fondled. During the 1996-1997 school year, Mother went to C.W.'s kindergarten teacher and *324 discussed the marks on the child's arm where Father had injected her. Mother then acknowledged she had resumed a relationship with Father. C.W. had told a school official Father had used a syringe to inject a liquid into her arm. C.W. also told that friends of Father had put their hands in her underwear when both parents were in the house. In December 1998, while Mother was in state prison, both children told counselors Mother had known about the abuse being inflicted upon them by Father and his friends, and she did nothing to stop the abuse. The girls were found to be lethargic and unhappy while with Mother; a resumption of visitation with Mother resulted in bed-wetting and nightmares. Counselors at school, social workers and police were later told in detail of the sexual abuse which occurred in the children's rooms at Mother's home. Both children were doing worse and suffering from post-traumatic stress disorder.
The trial court found good reason why the girls delayed their complaints about Mother's neglect in protecting them from Father and his friends. The court found Mother to have been a drug abuser and incapable of taking care of or protecting the girls, who had no emotional attachment to Mother. In fact, both children expressed a desire to remain in St. Joseph with the great-grandmother, and not to be returned to live with Mother. The children related their visits to independent counselors and school counselors up to and including the day before trial. By the date of trial, Mother was not in the justice system, but was living several hours distant from St. Joseph, with the sister with whom she had been involved in the fights described earlier. Further facts are set forth as necessary.

Standard of Review
This court will affirm the judgment terminating Mother's parental rights unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. In Interest of I.B., 48 S.W.3d 91, 96-97 (Mo.App.2001). The trial court's judgment will be sustained if it is in the best interest of the child and the termination is supported by clear, cogent and convincing evidence. In Interest of A.R., 52 S.W.3d 625, 633 (Mo.App.2001) (citation omitted). "The facts and reasonable inferences therefrom are reviewed in the light most favorable to the trial court's judgment with due regard given to the trial court's determination of witness credibility." Id.

Analysis
Courts have long held that "in a termination of parental rights proceeding, one of the grounds for termination, if adequately pleaded and proved, is sufficient to support termination." In Interest of L.T., 989 S.W.2d 673, 677 (Mo.App.1999). In this case, Mother asserts eight points of error, including that the trial court erred in terminating her parental rights under §§ 211.447.4(2), 211.447.4(3) and 211.447.4(6). Because the trial court properly terminated Mother's parental rights under § 211.447.4(6), the court need address that ground only.

I.
Section 211.447.4(6) states in relevant part that a petition can be filed to terminate parental rights when:
The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section 455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship *325 either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child.
Mother argues that the trial court's decision to terminate her parental rights under this subsection was against the weight of the evidence because there was no evidence that Mother would be unable to care for her children in the reasonably foreseeable future.
The record and judgment are replete with Mother's poor judgment concerning her daughters. As noted supra, the trial court found that despite the fact that Mother knew Father had injected one of her daughter's arms with an unknown substance (Mother had seen the needle marks), she resumed a relationship with Father. The court's judgment also indicates that Mother knew or should have known that Father's friends were putting their hands in the girls' underwear; indeed, one of the girls stated that Mother did know. The trial court also found that Mother had a drug history, including using methamphetamine and marijuana, and that her drug abuse contributed to her failure to protect her daughters from Father. Mother argues that the trial court failed to make findings on or assess the impact of her completion of drug therapy and the long-term incarceration of Father on Mother's ability to care appropriately for her children; however, a trial court need not address evidence favorable to the parent in terminating parental rights. In Interest of A.S.O., 52 S.W.3d 59, 66 (Mo.App. 2001). The judgment also includes a finding that Mother violated parole three times, the last time was in February 2000, only seven months before the judge began hearings on the amended petition to terminate parental rights. Thus, the trial court's judgment as to the Mother's parental unfitness was supported by clear, cogent and convincing evidence, and certainly the trial court's findings are adequate in showing a consistent pattern of abuse as contemplated by the broad language in the first part of the first sentence in § 211.447.4(6).
The second part of the first sentence of § 211.447.4(6) requires that the parental unfitness must be determined "to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child" (emphases added). The trial court noted that "both children have indicated that they do not desire to have any further relationship with their mother and that as a result, for the reasonable [sic] foreseeable future, [Mother] would be unable to care appropriately for the ongoing physical, mental and emotional needs of both of her children." The court did not make findings any more specific than that under the portion of the judgment relating to § 211.447.4(6), but it noted time and again that the girls have no emotional attachment to Mother; that one daughter feared living with Mother because Mother had allowed Father to hurt her; that Mother had failed over and again to protect the girls from Father's abuse; that Mother's repeated incarcerations had a deleterious effect on the emotional bond. The court also found that it was unlikely any counseling for Mother would be successful "because [Mother] would have to admit her knowledge of the abuse, something she is not likely to do." The court further found that the girls' prospect of reunification with Mother "are poor and would likely take a period of several years." As such, it is clear that the trial judge carefully considered Mother's parental *326 unfitness and found that the factors he enumerated would affect the "ongoing physical, mental or emotional" needs of the children in the foreseeable future. See Roya R. Hough, Juvenile Law: A Year in Review, 63 Mo. L.Rev. 459, 465-66 (1998)(distinguishing 211.447.4(6) from the "failure to rectify" prong, which is now § 211.447.4(3), and noting that the focus in the broader language of subsection 6 is whether "from the child's perspective, the amount of time necessary for the parent to overcome the barriers to reunification is unreasonable, as measured by the child's need for permanency at the earliest possible date"). Given the extensive findings by the trial court, this court finds Mother's contention that the judgment was against the weight of the evidence without merit. This point is denied.

II.
After having found by clear, cogent and convincing evidence that one of the statutory grounds for termination existed, the court next had to determine whether termination is in the children's best interests. § 211.447.5. "Unlike a finding that a proper ground exists for termination, a finding that termination is in the best interests of the child does not require proof by clear, cogent and convincing evidence." In Interest of A.S., 38 S.W.3d 478, 486 (Mo.App.2001). The standard of review for determining that termination of parental rights is in the best interests of the child is abuse of discretion. Id.
In Mother's final point, she argues, without citation of authority, that the record does not support the trial court's finding that it was in the best interests of her children that her rights be terminated. This court does not agree. As noted supra, the record here is replete with evidence that Mother ignored the repeated sexual escapades of Father and his friends toward both children. The record shows that Mother knew of the drug- and alcoholrelated events involving the girls. The record shows also Mother's involvement in exhibiting lewd conduct in front of the girls. The children exhibited behavior related to their abuse all during Mother's initial relationship with Father, during her second relationship with him, and then when she had limited visitation with them during her four trips to corrections facilities. The evidence was overwhelming that the children were doing well with their great-grandmother. They had no emotional ties with Mother and repeatedly indicated a desire to remain with their great-grandmother. No plans or services were available to effectuate a return within a reasonable time to Mother. This court affirms the finding that termination was in the best interest of both children. In the Matter of A.B.M., 17 S.W.3d 912, 917 (Mo. App.2000). This point is denied.
The judgment of the trial court is affirmed.
All concur.
NOTES
[1] All statutory references are to RSMo 2000 unless otherwise indicated.