In the Interest of K.D.H. & P.H.,
Juveniles, Respondents.

JUVENILE OFFICER, Respondent,

v.

Sonya HARDIN, Natural
Mother, Appellant.

In the Interest of P.H.,
Juvenile, Plaintiff.

JUVENILE OFFICER, Respondent,

v.

Sonya HARDIN, Natural
Mother, Appellant.

Nos. WD 47471, WD 47472.

Missouri Court of Appeals,
Western District.

March 15, 1994.

Kevin Thomas, Independence, for appellant.

Mary A. Marquez, Kansas City, for Juvenile Officer.

Kyla Grove, Kansas City, guardian ad litem, for juvenile respondents.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

PER CURIAM.

S.H. appeals from judgments terminating her parental rights as the natural mother of minor children K.D.H. and P.H. We affirm the juvenile court's termination of Mother's parental rights pursuant to section 211.447.-2(3), RSMo 1986 & Supp.1993.

The record reflects the following facts:

S.H. is the natural mother of a son, K.D.H., born January 7, 1983, and a daughter, P.H., born September 18, 1984.[1] On January 23, 1989, the juvenile officer of Jackson County, Missouri, filed two first amended petitions alleging that K.D.H. and P.H. were in need of care and treatment. The juvenile officer alleged that the children were without proper care, custody and support because Mother had left home without making arrangements for, and Mother's relatives were refusing to maintain, the care and custody of these children. The juvenile officer also alleged that D.S., the natural father, could not provide proper food, clothing and shelter for the two minor children.

After an evidentiary hearing, the juvenile court by order dated January 30, 1989, exercised jurisdiction of the children and placed them in the custody of the Division of Family Services pursuant to section 211.081, RSMo 1986.

On June 8, 1992, the juvenile officer filed separate petitions to terminate Mother and Father's parental rights to K.D.H. and P.H. under section 211.447. The juvenile officer alleged, in part, that: (1) the children had been under the jurisdiction of the juvenile division for more than one year; (2) conditions of a potentially harmful nature continued to exist. as evidenced by Mother's (a) failure to maintain aftercare drug treatment, (b) failure to regularly visit with her children,

---

1. Mother's parental rights to a third minor child, a son aged fourteen at the time of trial in 1992, are not at issue. This son did not want his legal relationship with his mother severed, and because of his age, his wishes were respected. The Division of Family Services did not proceed with jurisdiction or parental rights termination proceedings on his behalf.

(c) failure to maintain adequate housing for herself and children, (d) failure to provide financial support for the children and (e) general failure to participate in reunification; and (3) termination was in the best interest of the children. The separate petitions were consolidated for one hearing.

On October 22, 1992, a hearing to determine whether Mother and Father's parental rights to K.D.H. and P.H. should be terminated was initiated in the juvenile court.

After an evidentiary hearing, the court entered written orders terminating both Mother and Father's parental rights to K.D.H. and P.H. on January 11, 1993. The judgments contained the following relevant findings of fact and conclusions of law:

1. K.D.H. and P.H. have remained in foster care since September 30, 1988. Since November 1988, Mother has visited K.D.H. and P.H. on only six of eleven scheduled visits.

2. K.D.H. and P.H. have been under the jurisdiction of the Juvenile Court for a period exceeding one year and conditions of a potentially harmful nature continue to exist. There is little likelihood that those conditions will be remedied at an early date so that the children can be returned to the parents in the near future.

3. The continuation of the parent-child relationship greatly diminishes the children's prospects for early integration into a stable and permanent home. Specifically, both parents have failed to successfully participate in substance abuse aftercare programs, failed to maintain visitation with the children, failed to provide any support for the children and generally failed to work toward reunification. Mother did complete an inpatient substance abuse program but she relapsed fairly quickly. There is no indication that Mother overcame her relapse into alcohol and drugs.

4. The Division of Family Services made reasonable efforts to aid the parents on a continuing basis in adjusting their circumstances and conduct to provide a proper home for the children. The parents and Division of Family Services entered into a number of written service agreements calculated to address the issues which were barriers to reunification. The parents failed to substantially comply with the terms of those service agreements.

5. Given the length of time the children have been in foster care, the parents' failure to rectify their substance abuse and their overall lack of commitment to their children, no additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parents within an ascertainable period of time.

6. The Court makes no findings with respect to subsections (c) and (d) of section 211.447.2(3), RSMo 1986 as there was no evidence adduced to support the existence of those factors in the instant matter.

7. K.D.H. and P.H. have some emotional ties to their parents. Mother has failed to manifest a clear commitment to change and failed to follow through with consistent positive steps to do so.

8. It is in the best interests of the children that all parental rights of Mother and Father in, to and over the children K.D.H. and P.H. be terminated.

The children were ordered to remain in the care and custody of the Division of Family Services.

On February 10, 1993, Mother filed her notice of appeal of the termination decisions. Father does not join in the appeal. Mother contends that the decisions terminating her parental rights should be reversed and bases this argument on two alleged instances of trial error: (1) The court did not appoint an attorney to represent Mother during the trial on the petitions to terminate her parental rights, notwithstanding the fact that Mother requested counsel and was financially unable to employ counsel; and (2) the court's termination judgments are against the weight of the evidence because the record does not show that Mother failed to substantially comply with the terms of the social service plans entered into between the Division of Family Services and Mother. We affirm the trial court's orders and judgments terminating Mother's parental rights to K.D.H. and P.H.

The trial court's primary concern in a parental rights termination case is the best interest of the child. *In Interest of Y.M.H.*, 817 S.W.2d 279, 282 (Mo.App.1991), citing *In Interest of M.L.W.*, 788 S.W.2d 759, 762 (Mo. App.1990). On appeal, this court's standard of review is to affirm the trial court's decision "unless there is no substantial evidence in the record to support it, the decision is against the weight of the evidence, or the trial court erroneously declares or misapplies the law." *In Interest of Y.M.H.*, 817 S.W.2d at 282, citing *In Interest of M.L.W.*, 788 S.W.2d at 762. We will review the trial court's decisions to terminate Mother's parental rights to K.D.H. and P.H. by viewing the evidence, and all reasonable inferences from such evidence, in the light most favorable to that decision. *In Interest of Y.M.H.*, 817 S.W.2d at 282, citing *In Interest of M.L.K.*, 804 S.W.2d 398, 400 (Mo.App.1991).

## I. *APPOINTMENT OF COUNSEL*

Mother contends, for her first point on appeal, that the trial court committed reversible error when it did not appoint an attorney to represent her during the trial to terminate her parental rights to K.D.H. and P.H., notwithstanding the fact that she requested counsel and was financially unable to employ counsel. We find no error and affirm the trial court's decision that Mother should proceed pro se at trial.

Section 211.462.2, RSMo 1986 requires that the parents in a parental rights termination proceeding shall be notified of the right to have counsel, "and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court." However, the right to counsel under this statute is not absolute: "The circumstances of a particular case hold great weight in determining whether an indigent parent was unjustly denied the right to counsel in termination of parent rights proceedings." *In Interest of F.L.M.*, 839 S.W.2d 367, 374 (Mo.App.1992), citing *B.L.E. v. Elmore*, 723 S.W.2d 917, 920 (Mo.App.1987), *aff'd on remand sub nom. In Interest of B.L.E.*, 768 S.W.2d 86, 87 (Mo.App.1988).

In late July 1992, the court appointed Robert Schieber to represent Mother in the termination proceedings. At a hearing on October 22, 1992 before Judge O'Malley, Mr. Schieber requested a continuance of the case. As grounds for this request, Mr. Schieber cited numerous times between his appointment and the October hearing date that Mother did not attend their scheduled meetings. Specifically, Mother failed to appear at Mr. Schieber's law offices for meetings on August 26th, September 17th, September 23rd, and October 14th. Additionally, Mother did not attend a placement hearing on October 15th. Mr. Schieber testified that he had met with Mother briefly on only one occasion in August. Mother testified that she had been unable to attend the meetings with her attorney because of "transportation problems," yet she conceded to Judge O'Malley that she could have received bus fare from her father. In granting a continuance to November 19, 1992, Judge O'Malley admonished Mother that:

> If your lawyer comes in again and he says, "I haven't been able to talk to her except that day we were in court back on October 22nd," we are going on without you. If you have a defense that you need to mount, you need to get ready and mount it.

The parties reappeared before Judge O'Malley on November 19, 1992. Mr. Schieber made an oral motion before the court to withdraw from Mother's representation. Mr. Schieber testified that the only contact he had with Mother occurred the previous evening when she came to his office around 5:30 p.m. Mr. Schieber had attempted to speak with Mother several times by telephone, only to leave messages with her father and brother. Mother did return Mr. Schieber's calls a few times, but was unreachable later those days. Additionally, Mr. Schieber testified that Mother's brother told him that he had given Mother bus fare to visit Mr. Schieber at his offices, yet Mother never appeared. When asked by Judge O'Malley why she hadn't been in touch with Mr. Schieber, Mother replied, "I guess because we couldn't communicate, because when I called he was out of his office. He was always in court." Mother also testified that Mr. Schieber's letters to her were mailed to her father's home and that her father never told Mother of

these letters having been received. The court sustained Mr. Schieber's motion to withdraw.

Mother then requested another lawyer to represent her in the proceedings. The narrative between Judge O'Malley and Mother was as follows:

Mother: Is there any way possible I can get another lawyer?

Court: No, unless you want to hire one yourself. Why would we keep getting you a lawyer that you don't deal with? I already had this conversation with you before.

Mother: Uh-huh.

Court: Right?

Mother: (Nodded head.)

Court: You are shaking your head yes?

Mother: Yes.

Judge O'Malley ruled that he would continue the case until December 3, 1992. He then stated to Mother:

Court: As far as I am concerned you have given up the right and the opportunity to have a lawyer represent you. I don't think it is fair to the public to continue to pay for somebody to run up a bill when they can't even talk to you. I will expect you to be here ready for trial on that date. If you are not ... here ... then we will proceed without you.

Mother: (Nodded head.)

Court: All right?

Mother: Okay.

Court: Understand?

Mother: Uh-huh, yes. I understand.

Mother appeared before the court on December 3, 1993, and proceeded with the case pro se.

As the above facts reflect, counsel for Mother was appointed several months prior to the termination proceedings. Mother never appeared for pre-scheduled appointments with Mr. Schieber, missed a placement hearing, and was unreachable by telephone and the mail. The court granted one continuance on October 22, 1992, and granted Mr. Schieber's motion to withdraw on November 19, 1992. "The trial court cannot, nor is it legally authorized to, physically force a parent to meet with counsel." *In Interest of F.L.M.*, 839 S.W.2d at 374.

An analogy may be drawn between Mother's conduct and the mother's conduct in *In Interest of F.L.M.* In that case, the court appointed counsel for the mother in her termination of parental rights proceedings. *In Interest of F.L.M.*, 839 S.W.2d at 370. However, the mother failed to meet with her attorney, refused to come to his office and insisted that she have her own personal attorney. *Id.* at 374. At the hearing the mother requested a continuance. The trial court overruled the mother's request, holding that the mother was not denied due process; she rejected counsel by failing to keep her appointments to meet with her court-appointed attorney prior to the hearing. *Id.* The appellate court held that the trial court did not err in refusing to grant a continuance. *Id.* The appellate court said: "Parents must make a commitment to regaining their children's custody. Mother's failure to obtain an attorney's services is a further indication of Mother's superficial attempt to obtain their custody." *In Interest of F.L.M.*, 839 S.W.2d at 374. It may similarly be stated in our case that Mother "rejected" her court-appointed counsel, Mr. Schieber, by her continuous failure to keep their meetings and failure to maintain contact with him prior to the hearings.

Mother rejects the argument that she "rejected" Mr. Schieber as her counsel and cites case law for the proposition that failure to obtain an affirmative waiver of the right to counsel in a termination of parental rights proceeding is reversible error. *See In Interest of J.C., Jr.*, 781 S.W.2d 226 (Mo.App. 1989), *appeal after remand*, 841 S.W.2d 198 (Mo.App.1992). Mother argues that her conduct did not constitute a waiver of her statutory right to appointed counsel under section 211.462.2 and that the trial court erred by proceeding to trial without counsel present. However, we find that there is sufficient evidence in the transcript to support the trial court's implicit conclusion that she did waive that right.

As stated above, the record on October 22, 1992 and November 19, 1992 clearly indicates

that Mother understood what was expected and what the consequences of her actions would be. At the November 19th hearing, Judge O'Malley asked Mother, "[w]hy would we keep getting you a lawyer you won't deal with?" Judge O'Malley also stated, "I already had this conversation with you before," to which Mother replied "un-huh." Judge O'Malley confirmed Mother understood the substance of the previous discussion by asking, "right?", and Mother answered, "yes." In light of the warning, Judge O'Malley did not err in construing Mother's continued failure to cooperate, absent valid justification, as an affirmative waiver of her right to counsel.

Additionally, Mother contends that the facts represent not a "rejection" of Mr. Schieber's services but a classic case of miscommunication. We disagree. A mis-communication suggests a mistake or something beyond Mother's control. Mother testified that she had access to bus fare and to a telephone, yet rarely, if ever, used either to maintain communication with her court-appointed attorney. We find no merit to this argument.

## II. *TERMINATION OF PARENTAL RIGHTS*

■ Mother contends, for her second point on appeal, that the trial court's termination of her parental rights as mother to K.D.H. and P.H., based on section 211.447.2(3), RSMo 1986 & Supp.1993, should be reversed because the juvenile officer did not meet his burden at the trial court, and as such, the trial court's judgments are against the weight of the evidence and must be reversed. Citing the proposition that the juvenile officer's burden is only met "when the evidence 'instantly tilts the scales in the affirmative when weighted against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true," *In Interest of B.C.H.*, 718 S.W.2d 158, 160 (Mo.App.1986), citing *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984), Mother argues that the juvenile officer's evidence regarding her alleged non-compliance with social service plans did not "instantly tilt" the scales in the affirmative. Rather, she contends, the record does not show that

she failed to substantially comply with the terms of the social service plans she entered into with the Division of Family Services. We find no error and affirm the trial court's termination of Mother's parental rights.

Section 211.447.2 states that the court may terminate a parent's rights "if it finds that termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more" of three grounds for termination exist. Mother's parental rights were terminated under the third ground for termination, section 211.447.2(3). The court's written judgments, recited above, essentially tracked the language of section 211.447.2(3).

For cases to be grounded on section 211.-447.2(3), several requirements must be met: (1) The child must have been under the jurisdiction of the juvenile court for at least one year; and (2) either (a) the conditions which originally led the court to assume jurisdiction must still persist, or conditions of a potentially harmful nature continue to exist, and there is little likelihood that these conditions will be remedied at an early date so the child can be returned to the parent in the near future; or (b) the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. Additionally, the court must consider four factors when making its decision. Section 211.447.-2(3). Two of the four factors were the basis for Judge O'Malley's decision terminating Mother's parental rights; compliance with the terms of a social service plan entered into between Division of Family Services and Mother and the success or failure of Division of Family Services in resolving the problems preventing K.D.H. and P.H.'s return to Mother's home. Section 211.447.2(3)(a)–(b). It is the juvenile officer's burden with regards to this latter section that Mother contends was not met at trial.

Evidence presented at trial indicates that Mother signed four separate service agreements with the Division of Family Services dated October 17, 1990, September 27, 1991, January 13, 1992 and April 9, 1992. The record reflects that Mother substantially complied with the terms of the first service

plan: She completed a ninety day in-patient substance abuse program, applied for food stamps, and scheduled visits with her children. After Mother left the in-patient treatment program, however, her behavior deteriorated and she began abusing alcohol and failed to follow through with aftercare services. The record reflects that during the eighteen month period from the first to the last service agreement, Mother failed to maintain sobriety, secure housing or maintain regular contact with her children.

Mother claims that her compliance with the first service agreement prevented the scales from "instantly tilting" in favor of the juvenile officer. We disagree. The juvenile officer's burden of proof may be met even when "the court has contrary evidence before it." *In re: Adoption of W.B.L.*, 681 S.W.2d at 454, citing *Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo.1974). In reviewing the trial court's termination decision, we are bound to examine all facts in the light most favorable to the judgment. *In the Interest of M.E.W.*, 729 S.W.2d 194, 196 (Mo. banc 1987). K.D.H. and P.H. were initially placed in foster care in September, 1988, and the termination hearing was held in December, 1992. Mother has had over four years to rectify her alcohol abuse and stabilize her life. Mother's success with the first service plan does not outweigh her inability to follow through with the later service plans. The trial court's decision to terminate her parental rights to K.D.H. and P.H. are affirmed.

Judgments affirmed.

All concur.