144 S.W.3d 907 (2004)
In the Interest of P.D., A minor.
No. ED 84182.
Missouri Court of Appeals, Eastern District, Division Three.
September 28, 2004.
*908 John R. Bird, St. Louis, MO, for appellant.
Carol Kennedy Bader, St. Louis, MO, for respondent.
Before MARY R. RUSSELL, P.J., WILLIAM H. CRANDALL JR., J., and CLIFFORD H. AHRENS, J.
PER CURIAM.
P.M.D. ("mother") appeals from the judgment of the trial court terminating her parental rights to P.D., her daughter, under section 211.447 RSMo 2000.[1] Mother asserts that the trial court erred in denying a continuance and permitting her counsel to withdraw on the day of the termination hearing. She also contends that the trial court erred in terminating her parental rights under section 211.447.2(1) as this is not a proper ground for termination. She further argues that the trial court erred in terminating her parental rights under sections 211.447.4(2) and 211.447.4(3) because there was insufficient clear, cogent and convincing evidence to support the findings made pursuant to these sections. We reverse and remand.
Mother gave birth to P.D. on June 22, 2002. Both tested positive for cocaine, meaning that P.D. was born drug-exposed. Consequently, P.D. was taken into protective custody on June 24, 2002. On June 25, 2002, the Juvenile Officer of St. Louis County ("Juvenile Officer") filed a petition in the Family Court of St. Louis County alleging that P.D. was without proper care and custody because she and mother tested positive for cocaine, and that the presence of cocaine in P.D.'s urine was the result of abuse or neglect.
Mother and her attorney signed a written service plan ("service plan") with the Division of Family Services ("DFS")[2] on September 12, 2002, which the court approved. According to the service plan, mother was to do the following: visit with P.D. at least two times per month; make financial contributions to support P.D. in the form of clothes and gifts until otherwise ordered by the court; get a drug/alcohol evaluation at BASIC; undergo a psychological evaluation approved by DFS; complete drug/alcohol screenings within two days of a request by DFS; maintain adequate housing; obtain DFS-approved daycare; timely inform DFS of any changes in address, telephone number, *909 work, and people living with mother; cooperate and use services offered by DFS and/or the court; comply with any and all Family Court orders in effect. Additionally, mother had to satisfactorily attend and complete: psychological counseling; a support group for recovering chemical dependency (BASIC); a parenting/homemaker's skills training class, an alcohol/drug abuse treatment class (BASIC); and any program, class, or other course of action recommended as a result of an evaluation under the service plan. Mother also had to provide proof of attendance and/or participation in such classes and programs.
On December 5, 2002, the court entered findings regarding the petition of June 25, 2002. The court determined that the allegations that P.D. was without proper care and custody because she and mother tested positive for cocaine, and that the presence of cocaine in P.D.'s urine was the result of abuse or neglect were true, and set a hearing for February 18, 2003.[3] The court took jurisdiction of P.D. An interim visitation order was also entered on December 5, 2002 by consent of the parties, which increased mother's visitation up to six hours per week.
The court entered an order after the February 18, 2003, hearing. The court found that the permanency plan would be reunification with mother or adoption. Legal custody of P.D. was placed with DFS, the court noting that both children were in foster care, and that they were subject to the supervision of DFS.[4] The court also held that efforts to prevent or eliminate the need for removal of P.D. from mother's home were reasonable because removal of P.D. occurred during an emergency in which she could not safely remain at home. The court also held that removal was necessary to protect P.D. and further efforts could not have prevented or lessened the separation of the family because "mother has not participated in substance abuse treatment nor availed herself of other services offered by the Division of Family Services." The court held that the previous service agreement should remain in effect, and that visitation was to be arranged and supervised by DFS. The court ordered mother to engage in individual counseling, as arranged and approved by DFS, and to get substance abuse treatment approved by DFS. The court also ordered mother to submit to random drug screens as requested by DFS within twenty-four hours of such request. The court also required mother to pay $25.00 per month to DFS to support P.D. The court held that all prior orders, as modified, were to remain in force, and continued its jurisdiction until further order.
The Juvenile Officer filed a petition to terminate parental rights to P.D. on August 7, 2003, which was amended on September 24, 2003.[5] The petition, as amended, alleged that: P.D. had been abused or neglected, which the court had so adjudicated on December 5, 2002; mother, legal father, and natural father each had abandoned P.D. without good cause and for six or more months by not providing parental support and by not making arrangements to visit or communicate with her, although able to do so; and P.D. had been in foster *910 care for at least fifteen of the most recent twenty-two months.
There was a court hearing on September 23, 2003, at which time the trial for the petition to terminate parental rights was set for December 17, 2003. Mother was at the September 23rd hearing, and gave her address to her court-appointed attorney. Her attorney sent her a letter confirming the December 17, 2003 trial date, but received no communications back from mother, who lacked a telephone. Notice of the court date was sent to mother. On December 17, 2003, neither mother, nor the legal father, nor the natural father were present at the hearing. Mother's attorney did not know why mother was not present, and orally requested a continuance to determine why she was not able to be there and in order that "she would have the opportunity to be here and defend herself." After determining that no one present had had any contact with mother that would explain her absence, the court denied the motion to continue. Mother's attorney thereupon moved to withdraw based on his lack of contact with mother, "both today and since September 23rd," which left him "unable to adequately prepare for this hearing" and therefore unable to represent her effectively. The court granted this motion.
The hearing proceeded. Juvenile Officer offered a number of exhibits, which the court accepted into evidence. The Juvenile Officer informed the court that the allegation of abandonment by mother would be dismissed. The sole witness was Angela Curtis, a Social Service Worker II employed by DFS.
The trial court made findings of fact based on "clear, cogent and convincing evidence." It found that it had jurisdiction pursuant to sections 211.031, 211.041, 211.181, and 211.442 et seq., and that P.D. had been under its jurisdiction since December 5, 2002. The court made a number of other findings relating to the various grounds for termination alleged in the amended petition to terminate parental rights. The court concluded that based on the evidence presented, it was in the best interests and welfare of P.D. to terminate mother's parental rights. Accordingly, the court ordered mother's parental rights terminated.[6] Mother now appeals from this judgment.
We review this court-tried case under the standard of Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court terminating parental rights unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless the trial court erroneously declared or applied the law. In the Interest of T.S., 925 S.W.2d 486, 487 (Mo.App.1996). The trial court's decree will be sustained if it is in the best interests of the child and if the termination is supported by clear, cogent, and convincing evidence. In the Interest of G.M.T., 965 S.W.2d 200, 202 (Mo.App.1998). This Court reviews termination of parental rights cases closely because such termination interferes with a basic liberty, freedom from governmental interference with family and child rearing. In the Interest of J.M.N., 134 S.W.3d 58, 65 (Mo.App.2004). The termination of parental rights is the exercise of an awesome power, and should not be done lightly. Id.
Concerning termination of parental rights cases, the Missouri Supreme Court recently stated as follows:
The constitutional implications of a termination of parental rights also inform *911 the standard of appellate review. The bond between parent and child is a fundamental societal relationship. A parent's right to raise her children is a fundamental liberty interest protected by the constitutional guarantee of due process. It is one of the oldest fundamental liberty interests recognized by the United States Supreme Court. The fundamental liberty interest of natural parents in raising their children does not evaporate simply because they have not been model parents or have lost temporary custody of their children to the State. Those faced with forced dissolution of their parental rights have a more critical need for protections than do those resisting state intervention into ongoing family affairs. The termination of parental rights has been characterized as tantamount to a "civil death penalty."
In the Interest of K.A.W. and K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004) (citations omitted).
In her first point on appeal, mother contends that the trial court erred in denying her motion for continuance made by mother's counsel, and thereafter in granting her attorney's motion to withdraw, thereby violating her right to due process of law.
The denial of a request for a continuance is seldom reversible error, but the trial court has neither an absolute nor an arbitrary discretion, and it will be reversed if it has abused its discretion. In the Interest of D.C., 49 S.W.3d 694, 698-99 (Mo.App.2001). An appellate court will find an abuse of discretion in denying a motion for a continuance" `[o]nly in extreme cases where it clearly appears that the moving party ... is free of any dereliction.'" Bydalek v. Brines, 29 S.W.3d 848, 855 (Mo.App.2000) (quoting Harris v. Desisto, 932 S.W.2d 435, 439 (Mo.App.1996)). A trial court abuses its discretion "when its ruling is clearly against the logic of the circumstances before it and is so unreasonable and arbitrary as to shock the sense of justice and indicates a lack of judicial consideration." Whitworth v. Jones, 41 S.W.3d 625, 627 (Mo.App.2001).
Rule 65.03 requires that an application for a continuance be made by a written motion accompanied by the affidavit "of the applicant or some other credible person" setting forth the facts upon which the application is based, unless the adverse party consents that the motion be made orally. Rule 65.03 also requires that for any application for a continuance which is made within thirty days of the date that the matter is scheduled to be heard, the attorney "shall certify that the party for whose benefit the motion is filed has been consulted, that the party is aware of the contents of the motion, and the party's position with respect to the motion." The Juvenile Officer did not consent to the motion being made orally, and there was no written motion made. Absent compliance with the requirements of Rule 65.03, there can be no abuse of discretion in denying a continuance. Bydalek, 29 S.W.3d at 855-56. Mother did not comply with the requirements of Rule 65.03, and that alone was sufficient for the trial court to deny the motion for a continuance.
Even if mother had complied with Rule 65.03, the trial court still would not have abused its discretion in denying the motion for a continuance. It is only in extreme cases in which it is clear that the movant is free from any dereliction that this Court will find the denial of a motion for a continuance to be an abuse of discretion. Bydalek, 29 S.W.3d at 855. In the instant case, mother was not present for the hearing. She had been informed of the December 17, 2003 trial date at the previous hearing, notice had been sent to *912 her last known address and not been returned as undeliverable, and her attorney had sent her a letter confirming the trial date. Her attorney had no other contact with mother subsequent to the September 23, 2003, hearing. Nothing in the record shows that mother made any effort to contact the court on December 17, 2003, or at any time thereafter, to inform it why she was unable to be there for the hearing. Mother was not free from any dereliction in the problems resulting in the request for a continuance. The denial of the motion for continuance, by itself, was not an abuse of discretion.
The trial court's ruling on the motion of mother's attorney to withdraw on the day of trial, while separate from the motion for a continuance, is related to it. Section 211.462.2 provides that in an action to terminate parental rights "[t]he parent... of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, shall be appointed by the court. Notice of this provision shall be contained in the summons." Due to the seriousness of a proceeding to terminate parental rights, the terms of section 211.462.2 are to be strictly applied. In re I.B., 48 S.W.3d 91, 97 (Mo.App.2001). However, section 211.462.2 does not establish an absolute right to counsel. Id. Missouri courts have permitted attorneys to withdraw in termination of parental rights cases without appointing a new counsel. See I.B., 48 S.W.3d at 97-99; In the Interest of K.D.H., 871 S.W.2d 651, 654-56 (Mo.App.1994).
However, in those cases the attorneys filed their motions to withdraw several weeks or more before the termination hearing, and the clients had notice that the court had granted the motion to withdraw at least two weeks prior to the termination hearing. Id. In addition, the attorneys permitted to withdraw had also presented ample evidence of the repeated failure of their respective clients to cooperate with their representation. Id. In K.D.H., 871 S.W.2d at 654, the client had failed to appear at the attorney's office for five scheduled meetings, failed to appear at a placement hearing, and had met with the attorney only once briefly between July 1992 and October 1992, and the attorney had requested a continuance from October 22, 1992 to November 19, 1992. The court granted the continuance, but admonished the client that she needed to prepare for the case with her attorney. Id. On November 19, 1992 the attorney made an oral motion to withdraw, stating that the only contact that he had with his client was the previous evening at 5:30 p.m. when she came to his office. Id. He stated that he had been unable to contact her by phone, having left messages with her relatives, and he had sent letters to her, which she claimed never to have received because they had been sent to her father's house. Id. at 654-55. The court sustained the attorney's motion to withdraw, but continued the case until December 3, 1992. Id. at 655. In I.B., 48 S.W.3d at 97-98, the client had three different attorneys withdraw from representation, all indicating that he had repeatedly failed to cooperate with their representation. The last attorney had filed three separate motions to withdraw between April 5, 1999 and March 17, 2000, citing irreconcilable differences, and the client's own request that she withdraw. Id. The client had repeatedly filed pro se motions, alleged that the attorney had provided ineffective assistance of counsel, failed to appear at hearings, and tried to fire her. Id. The court granted the last motion to withdraw and sent notice to the client to his last known address sixteen days prior to the termination hearing, which notice the client admitted receiving. Id. at 98. The court denied the *913 client's pro se motions for continuance made the day before and the day of the termination hearing. Id. at 98-99.
In the case before this Court, the client failed to appear at the termination hearing. Her counsel made an oral motion for a continuance so that it could be determined why she was not present and so "she would have the opportunity to be here to defend herself." He stated that the last time that he had talked with mother was at the September 23, 2003 hearing, and that he sent her a letter confirming the trial date. Unlike I.B. and K.D.H., there was no evidence of multiple missed meetings or hearings by mother, or of multiple letters sent by the attorney which the client ignored or claimed not to have received, or of irreconcilable differences or repeated failures to cooperate with representation, other than mother's failure to initiate communication with the attorney. Upon the trial court's denial of his oral motion to continue the case, the attorney then moved to withdraw, asserting that it was the only ethical alternative that he had because "based on my lack of contact with her, both today and since September 23rd, that I am unable to adequately prepare for this hearing and, therefore, could not effectively represent her."
Supreme Court Rule 116.02(c) states that an attorney may withdraw in a juvenile court proceeding "only with leave of court and in a manner consistent with Rule 4 and any applicable local court rules." Local Rule 21.4 of the Twenty-First Judicial Circuit states that attorneys "shall withdraw from a case only by leave of Court, after filing a copy of the communication showing the client has notice of the withdrawal and of the date of trial setting if any." Supreme Court Rule 4-1.16(d) provides in part that upon termination of representation, an attorney "shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel,..." The withdrawal of mother's counsel was not done in a manner consistent with Rule 4 and the local rules, as mother clearly had no notice since the motion was made orally, in court, on the date of the hearing.
It is not automatically error to permit an attorney to withdraw on the day of the termination hearing. Rather, such withdrawals have to be addressed by the trial court based on the circumstances before it in its sound discretion. For example, In re Dependency of A.G., 93 Wash.App. 268, 968 P.2d 424 (1999), the mother asserted that her due process rights had been violated because her counsel was permitted to withdraw on the day of the termination hearing. The only witness was the case worker. Id. at 427. The court permitted the attorney to withdraw because he could not effectively or ethically represent her due to mother's own inaction. Id. at 429. The attorney had represented the mother for four years. Id. He told the court of his diligent efforts by writing and by phone to try to contact the mother, who was not present at the hearing, over the preceding six months. Id. at 427, 429. Mother had had no contact with her counsel, the court, or the state agency, and had apparently left no one except "Aunt Mary" with a current address or telephone number. Id. 426-28. The trial court noted the attorney's exceptional efforts to try to contact his client before permitting him to withdraw. Id. at 427. The appellate court found no error under these circumstances. Id. at 429-30.
Contrast that to the circumstances in In re Alyssa C., 153 Ohio App.3d 10, 790 N.E.2d 803 (2003) and In re M.L.R., 150 Ohio App.3d 39, 779 N.E.2d 772 (2002), both juvenile court proceedings. In both cases the attorneys sought to withdraw on *914 the day of a dispositional hearing with no previous motion to withdraw and without notice to the clients. See Alyssa C., 790 N.E.2d at 804-05, 809; M.L.R., 779 N.E.2d at 773-75. In Alyssa C., 790 N.E.2d at 809-10, the attorney asserted that he had had no contact with his client for over six months and claimed to have tried to contact the client. The trial court granted his motion to withdraw based on this asserted lack of communication. Id. at 809. The appellate court quoted language to the effect that communication is a two-way street, and that the assertion that a client has not contacted the attorney does not prove that the client has been uncooperative, unless the lawyer has affirmatively attempted to contact the client without success. Id. at 810 (quoting M.L.R., 779 N.E.2d at 775). The appellate court observed only a few minutes after the attorney's assertions, the caseworker testified that she had spoken with the client only two days prior to the hearing, leading the court to "question the tenacity of counsel's attempted communication." Alyssa C., 790 N.E.2d at 810. In M.L.R., 779 N.E.2d at 773-75, the attorney who withdrew on day of the hearing asserted that his client had been "uncooperative," but the only showing of a lack of cooperation had been the failure of the client to contact the attorney since the previous adjudicatory hearing. The appellate court in M.L.R. cited to rules similar to those in Missouri regarding withdrawal by attorneys, and concluded that the trial counsel's simple claim that his client was "uncooperative" was insufficient to show why he should be permitted to withdraw, "especially on the day of the dispositive hearing." Id. at 775-76. The appellate court noted that the trial court took no action to prevent prejudice to the client when it permitted the attorney to withdraw. Id. at 776. Both appellate courts held that it was error for the trial court to permit the attorney to withdraw on the day of trial under the circumstances presented. See Alyssa C., 790 N.E.2d at 810; M.L.R., 779 N.E.2d at 776.
The case before this Court is much more like that in Alyssa C. and M.L.R. than that of Dependency of A.G., I.B. or K.D.H. In the present case, the attorney withdrew on the day of the termination on an oral motion to withdraw, with no previous written motion to withdraw and no notice to mother, who was not present. The attorney stated that he had had no contact with mother since the September 23, 2003 hearing, other than the letter that he sent to her confirming the trial date. He was aware that she did not have a telephone. He did not assert that mother had missed any scheduled appointments, or had not responded to multiple efforts to contact her on his part. Like Alyssa C., mother had contact with DFS only two days prior to the hearing when she visited P.D., suggesting that she was not unreachable. Under these circumstances, and when combined with the denial of the motion for a continuance, the trial court erred in permitting mother's counsel to withdraw on the day of the trial. Point sustained.
Because we find that the trial court erred in granting the motion of mother's counsel to withdraw, we need not address mother's remaining points on appeal.
The judgment is reversed, and the cause remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] All further statutory citations are to RSMo 2000 unless noted otherwise.
[2] DFS is now known as the Children's Division, but to avoid confusion, we will use DFS throughout this opinion.
[3] This order also included P.B., who lived with mother and was the child of her husband, but not her child.
[4] There were additional holdings regarding P.B., but P.B. is not the subject of this appeal and such matters are accordingly not discussed.
[5] The petition also sought to terminate the parental rights of the legal father and the natural father, neither of whom are involved in this appeal.
[6] The trial court also terminated the parental rights of the legal and natural fathers of P.D., but the rights of those individuals are not the subject of this appeal.