In the Interest of L.D.R. and L.B.N.B.

No. ED 84858.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 9, 2005.

---

**2.** We note that here, unlike in *Emery,* the record reflects that defense counsel requested jury sentencing.

Mark D. Hirschfeld, Clayton, MO, for appellant.

Barbara L. Greenberg, Clayton, MO, for respondent.

Dorothy E. Schuchat, St. Louis, MO, for juveniles.

## *OPINION*

GLENN A. NORTON, Judge.

Father appeals the judgment terminating his parental rights. We affirm.

## I. BACKGROUND

Mother and Father are not married to each other, but have had an "on and off often volatile relationship." Mother was married to another man at the time these children were born. Later, when Mother was staying at Father's house with the children, Father went to court to obtain an order of protection against Mother. While he was gone, Mother unexpectedly vacated Father's house and left the children with her sister, which ultimately resulted in the children being taken into protective custody and placed with Mother's cousin. According to the initial petitions for the court to take jurisdiction, the children needed care and treatment because Mother's whereabouts were unknown and because Father "failed to assume custody" of the children when their aunt contacted him. The trial court found that those allegations were true, that Mother was in need of substance abuse treatment and that Father was not an appropriate placement and entered judgment assuming jurisdiction over the children. In the court's judgment adopting a permanency plan of reunification, Father's limited visitation with the children was "not to include contact with [Mother]."

Ultimately, the juvenile officer filed petitions to terminate, in which it was alleged that the children had been abused or neglected as found in the jurisdiction judgment, that the children had been in foster care for at least 15 of the last 22 months and that Mother's husband—the children's legal father—had abandoned them. After a hearing at which the children's social worker, Mother's cousin and Father testified, the court entered judgment terminating Father's parental rights based on section 211.447.4(3) RSMo 2000,[1] commonly referred to as the "failure to rectify" provision. The court found that the children had been under the jurisdiction of the court for over a year, "that the conditions which led to the assumption of jurisdiction still persist, conditions of a potentially harmful nature continue to exist, and continuation of the parent-child relationship greatly diminishes the prospects of the children for early integration into a stable and permanent home." The court noted that although Father had complied with many of the provisions of the court-approved social service plan, he "has failed on a continuing basis ... to adjust his circumstances or conduct to provide a proper home for the child[ren] despite diligent, reasonable and continuing efforts by the Children's Division to aid him in doing so." Much of the evidence the court cited in support of terminating Father's rights related to the likelihood that he would allow unsupervised contact between Mother and the children if they were placed in his custody. The court found that Father continued to maintain a relationship with Mother, allowed her to enter his home and allowed contact between Mother and the children despite his awareness of court orders to the contrary. The court also cited Father's testimony that Mother had threatened to burn his house down, had poured gasoline on his home and had sto-

---

1. All statutory references are to RSMo 2000.

len his truck and set fire to it.[2] The trial court also terminated the parental rights of Mother and her husband, both of whom failed to appear at the hearing and neither of whom appeal the judgment. Mother's termination was based in part on her chemical dependency, treatment for which had been unsuccessful, and on her failure to provide for the children.

On appeal, Father argues that the judgment was against the weight of the evidence and that there was insufficient evidence to terminate his parental rights under section 211.447.4(3).[3]

## II. DISCUSSION

In order to terminate parental rights, section 211.447.5 requires the trial court to find (1) that one or more statutory grounds for termination has been proven by clear, cogent and convincing evidence and (2) that termination is in the best interests of the children. *In re P.L.O.*, 131 S.W.3d 782, 788 (Mo. banc 2004). Evidence is considered to be clear, cogent and convincing if it "instantly tips the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004). On appeal, we will affirm the trial court's determination that a statutory ground for termination has been proven under this standard unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *P.L.O.*, 131 S.W.3d at

788–89. We defer to the trial court's factual findings and consider the evidence and reasonable inferences to be drawn from that evidence in a light most favorable to the judgment. *Id.* at 789. Still, because of the constitutional implications of severing the sacred parent-child relationship, we carefully examine the trial court's findings of fact and conclusions of law and strictly construe section 211.447 in favor of preserving that relationship. *K.A.W.*, 133 S.W.3d at 12.

Here, the sole statutory ground for terminating Father's parental rights was section 211.447.4(3), which provides that termination is appropriate if:

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

The trial court must make several specific factual findings under subsections 211.447.4(3)(a)–(d), but the ultimate issue is whether " 'an unremedied, neglectful situation' " continues to exist. *In the Interest of S.J.H.*, 124 S.W.3d 63, 67 (Mo.App. W.D.2004) (quoting *In re B.S.B.*, 76 S.W.3d 318, 333 (Mo.App. W.D.2002)).

2. Although the ground on which termination of Father's rights was based was not alleged in the petition to terminate, Father did not object to any of the above evidence cited by the court in support of that ground, which appears to have been irrelevant to any other issue pleaded in the petition. Nor does he challenge on appeal the discrepancy between the petition and the judgment. Thus, it appears that the issue was tried by implied

consent. *See In the Interest of S.M.H.*, 160 S.W.3d 355, 365–66 (Mo. banc 2005) (error to terminate parental rights on grounds not pled in termination petition, unless additional ground is tried by implied consent).

3. Father does not challenge the trial court's determination that termination is in the children's best interests.

■ Other than Father's initial failure to respond and care for the children after Mother left the children with her sister, the only harmful condition listed in the judgment that involves Father related to the likelihood that he would allow unsupervised contact between Mother and the children if they were placed in his custody. Father argues that the court originally assumed jurisdiction over the children because of his initial failure to take custody of the children, and not because he might allow the children to come in contact with Mother. But in deciding whether to terminate parental rights under section 211.447.4(3), the trial court may consider the continued existence of potentially harmful conditions that developed or became known after it originally assumed jurisdiction over the children. *In the Interest of M.E.W.*, 729 S.W.2d 194, 196 (Mo. banc 1987) (citing section 211.447.2(3), the former version of section 211.447.4(3)); *see also B.S.B.*, 76 S.W.3d at 333. Thus, even if Father rectified the initial problem and the trial court erred in stating that "the conditions which led to the assumption of jurisdiction still persist" with respect to him, that error is immaterial because the trial court properly considered other potentially harmful conditions in addition to those it knew about when it assumed jurisdiction over the children—namely, the likelihood that Father would permit the children to be exposed to Mother.

■ A parent's continued exposure of his children to someone whom he knows is harmful to their well-being can, under certain circumstances, constitute a potentially harmful condition that would justify termination under section 211.447.4(3) if not rectified. *See In re C.M.K.*, 140 S.W.3d 219, 224–26, 226 n. 11 (Mo.App. S.D.2004) (finding sufficient evidence to terminate parental rights under sections 211.447.4(2), (3) and (6) when parents engaged in abuse and domestic violence in presence of children and mother continually failed to distance herself from father's abuse despite numerous warnings from social workers). There was clear, cogent and convincing evidence of such a situation here.

The children's service worker testified that Father had shown an interest in the children, but that they would be in danger in his custody because of the likelihood that Mother would come and take the children and that Father would not be able to stop her from doing so. She further testified that, despite the court order prohibiting Father from permitting contact between Mother and the children during his visitation, Mother was present during every visit attended by a parent aide at Father's house.

Although Father denied knowing that Mother was not supposed to be present during his visits with the children, the court had expressly ordered that his visits were "not to include contacts with [Mother]." Father testified that he would abide by all court orders if given custody of the children and that if Mother were not supposed to see the children, then he would not allow such contact. But the trial court specifically found that this testimony was not credible. Moreover, Father admitted that Mother "comes and goes when she wants to" and has "always been able to do that." He testified that he would talk to Mother anytime she wanted to talk, that she had been at his house within the last two weeks and that she still comes around whenever she wants to, even if he tells her not to do so. Father described his relationship with Mother as one of "cohabitation and love."

Nevertheless, Father admitted that Mother had set his truck on fire, thrown gasoline on his house, threatened to burn the house down and stolen his cars and sold them for drugs. Although it is not clear from the record precisely when these incidents occurred, it appears that at least

some of them occurred fairly recently. Father stated that he is not afraid of Mother physically, but that he is afraid of what she might do because she is "an unpredictable type of person." He considers Mother to be a liar and believes almost nothing that she says. After the children had been taken into protective custody, he allowed Mother to stay in his home despite having obtained an order of protection against her because "we were (indiscernible) together. The babies were gone. And we had to figure out a way to get them back." Father admitted that Mother wants him to have custody of the children, and Mother's cousin overheard her planning "to get [Father] to get custody of the kids" so that Mother could come over and take care of them.

This testimony meets the clear, cogent and convincing evidence standard of proof that is required in termination cases. There was substantial evidence that Father would allow contact with Mother and that contact would be so harmful to the children as to instantly tilt the scales in favor of terminating Father's parental rights based on an unremedied and neglectful situation under section 211.447.4(3). Father's own testimony reveals the irresponsible, unpredictable, dangerous and violent nature of Mother's behavior. Even though there is no evidence that Mother's violence or erratic behavior was ever specifically directed at these two children, the trial court need not wait until an incident occurs in order to conclude that Mother poses a significant risk of harm to her children. Moreover, the judgment indicates that several months after these children were taken into protective custody, Mother gave birth to another child who was "born exposed to cocaine," which further suggests disregard for how her conduct affects her children. There was also ample evidence to demonstrate that if Father were given custody of the children, they would be allowed contact with Mother. Despite the fact that Father obtained an order of protection against Mother, fears what she might do and believes almost nothing she says, he has continued to allow her into his home. He has done so during his visitation periods and at other times, in spite of a court order prohibiting contact between Mother and the children. A parent's conduct in the past as well as during the period in which the trial court retains jurisdiction over a child can provide good evidence of future behavior. *K.A.W.*, 133 S.W.3d at 9. Here, Father's conduct up to and including the time of the termination hearing provides good evidence that if he were given custody of the children in the future, then he would permit—or be unable to prevent—contact between them and Mother, even if the court prohibited such contact.

Father contends that he substantially rectified any potentially harmful conditions by cooperating and complying with nearly all of the provisions of the social service plan. Father also argues that he has made better progress towards compliance with the plan and rectifying his circumstances than other parents have made in cases where the termination judgments were reversed on appeal. Although Father may have made significant progress toward compliance with the social service plan, "compliance with a service agreement does not prevent the scales of justice from 'instantly tilting' in favor of the findings of the juvenile court." *In re Q.D.D.*, 144 S.W.3d 856, 861 (Mo.App. S.D.2004) (citing *In the Interest of K.D.H.*, 871 S.W.2d 651, 657 (Mo.App. W.D.1994)). Compliance with a social service plan is merely one factor to consider. *S.J.H.*, 124 S.W.3d at 67. Here, the harmful condition on which termination was based—Father's continued exposure of his children to a violent person who has exhibited disregard for her children's welfare—instantly tipped the scales in favor of termination and was not remedied or outweighed by Father's com-

pliance with his service plan. Rather, there was ample evidence that despite progress with the plan, Father would not be able to rectify this condition in the future.

Therefore, we conclude that the judgment was supported by substantial evidence, that it was not against the weight of the evidence and that there was clear, cogent and convincing evidence to support the termination of Father's parental rights under section 211.447.4(3).

Point denied.

### III. CONCLUSION

The judgment is affirmed.

CLIFFORD H. AHRENS, P.J. and NANNETTE A. BAKER, J. concurring.