**In the Interest of: J.S.W.**

**No. ED 92423.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 27, 2009.

Christopher M. Braeske, St. Louis, MO, for Appellant.

Allison M. Wolff, Family Court of St. Louis County, Clayton, MO, for Respondent.

ROY L. RICHTER, Judge.

C.J.J. ("Mother") appeals the commissioner's findings, adopted and confirmed by the judge, terminating her parental rights to her minor child J.S.W. We reverse and remand.

## I. BACKGROUND

J.S.W. was born on July 11, 2006. On November 22, 2006, the St. Louis County Juvenile Officer ("Juvenile Officer") filed an amended petition which alleged that the child was without proper care and custody because Mother was incarcerated.

The court assumed jurisdiction over J.S.W. after a hearing on November 28, 2006 during which he was adjudicated abused and/or neglected. Mother was incarcerated and therefore not present at the hearing, but her court-appointed attorney, Laura Sidel ("Sidel"), appeared on Mother's behalf.

The Juvenile Officer filed a petition to terminate Mother's parental rights on June 19, 2007.[1] The petition sought termination pursuant to section 211.447.2(1) RSMo 2000 and sections 211.447.5(2) and (3) RSMo 2000.[2]

Before the hearing on the TPR petition, on July 15, 2008, the court issued an order indicating that Mother had not been served with summons in the case. Accordingly, the court extended the time for service, and the record reflects that Mother personally received service and a copy of the petition on July 27, 2008. The summons informed Mother that she was to appear for trial in the Family Court of St. Louis County on August 12, 2008 at 9 a.m. and that she had the right to an attorney.

On August 12, 2008, the date set for trial, the court issued a continuance order rescheduling the case for trial on September 16, 2008 due to lack of service on the two putative fathers. The continuance order does not indicate which parties were present on this date, and it is not clear from the record whether or not Mother appeared at that time.

The court held a trial on the issues on September 16, 2008. Present for trial were the guardian ad litem, counsel for the Juvenile Officer, and the Children's Divi-

---

1. The petition also sought to terminate the named and/or natural fathers' rights. Only Mother's rights are at issue in this appeal.

2. Unless otherwise noted, all subsequent statutory citations are to RSMo 2000.

sion caseworker, Beena Huber ("Huber"). Neither Mother nor Sidel attended the hearing.

Huber was the sole witness at the hearing and testified that she did not know Mother's whereabouts and had not spoken to Mother since May 2008. Based on reports from Mother's aunt and probation officer, Huber believed that Mother was no longer in prison, though she was unsure of Mother's release date. Huber testified that Mother had not seen J.S.W. since February 2008. Due to Mother's failure to comply with her court-ordered services and to support J.S.W., Huber believed it was in J.S.W.'s best interests for Mother's right to be terminated.

On October 21, 2008, nearly one month after the hearing, Mother filed with the court a financial form requesting appointment of counsel and also a letter asking that J.S.W. be returned to her care.

Ten days later, on October 31, 2008, the court issued its judgment terminating Mother's parental rights pursuant to section 211.447.5(2). In an order dated the same day, the court acknowledged receipt of Mother's letter and financial statement plus request for counsel, but stated that Mother had failed to appear for the September 16, 2008 hearing and that it had already entered its judgment terminating her parental rights. The court's order further stated it was appointing Sidel "to act as counsel for [M]other in the event that Mother wishes to pursue any post-trial relief; the Court finds that Mother is indigent and need make no deposit."

On November 17, 2008 Sidel filed a Motion for Rehearing and Motion to Set Aside Judgment and Motion to Amend Judgment ("post-trial motion"). The post-trial motion alleged that the court's judgment terminating Mother's parental rights should be set aside because, *inter alia*, the court violated Mother's constitutional rights when it held a contested TPR hearing without her presence. The court denied the post-trial motion.

On November 24, 2008, Mother wrote a second letter to the court wherein she expressed opposition to the termination of her parental rights as well as her lack of an attorney throughout the proceedings.

Sidel filed an amended post-trial motion on Mother's behalf on December 29, 2008. The amended motion expounded on the claims contained in the original motion and stated, in part, that Mother's "Fifth Amendment and Fourteenth Due Process rights under the U.S. constitution were denied, in that she was not provided with counsel despite a verbal request for counsel in the termination of parental rights case, made to Children's Division." The motion further claimed that Mother "was denied her statutory rights to an attorney under 211.462."

In a supplemental order and judgment dated January 5, 2009, the court denied Mother's amended post-trial motion. In so doing, the court stated that Mother had been released from a medium security institution in June or July 2008, and had made no further contact with Huber, her caseworker, as of the September 16 termination hearing. The court reaffirmed that Mother did not appear at the hearing, nor did she request a continuance. It further found that Mother "did not request counsel for these proceedings in a timely way and therefore was not deprived of her rights as alleged by counsel."

Mother appeals.

## II. DISCUSSION

██ We review a court-tried case pursuant to the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the trial court's decision to terminate parental

rights unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless the trial court erroneously declared or applied the law. *In re P.D.*, 144 S.W.3d 907, 910 (Mo.App. E.D.2004). We also review the trial court's decision to determine if it is in the child's best interests, and if the termination is supported by clear, cogent, and convincing evidence. *Id.* Termination of parental rights is an exercise of awesome power, and therefore we review such cases closely. *Id.* (citing *In the Interest of K.A.W. and K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004)).

In her first point on appeal, Mother argues that the trial court erred in terminating her parental rights because the court failed to appoint counsel for Mother in violation of section 211.462. We agree.

■ Section 211.462.2 provides that, in all actions to terminate parental rights, "[t]he parent ... of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court. Notice of this provision shall be contained in the summons." Due to the gravity of proceedings to terminate parental rights, the terms of section 211.462.2 are to be strictly applied. *P.D.*, 144 S.W.3d at 910; *In re I.B.*, 48 S.W.3d 91, 97 (Mo.App. W.D.2001). "Failure to appoint counsel to represent the parents or to obtain an affirmative waiver of that right has been held to be a reversible error." *In re K.L.T.*, 237 S.W.3d 605, 607 (Mo.App. S.D.2007).

■ This case presents a situation where Mother did not appear at the hearing and counsel did not appear on her behalf. Thus, no one defended Mother's rights or represented her interests when the state terminated her parental rights to J.S.W.

■ While section 211.462.2 does not establish an absolute right to counsel in TPR proceedings, it requires a court to appoint counsel when the parent: (1) requests court-appointed counsel; and (2) demonstrates that he or she is indigent and financially unable to employ counsel. *I.B.*, 48 S.W.3d at 91 (citing *In re J.D.*, 34 S.W.3d 432, 434 (Mo.App. W.D.2000)); *K.L.T.*, 237 S.W.3d at 607 n. 3.

The trial court appointed Sidel to represent Mother at the outset of the case,[3] and Sidel appeared at the initial abuse and/or neglect adjudication in November 2006. The record, however, provides no explanation for Sidel's total absence from and lack of involvement in the remainder of the TPR proceedings. Mother attended five permanency and post-permanency hearings held between March 2007 and May 2008 and Sidel did not once appear. In fact, after the initial abuse and/or neglect adjudication in November 2006, Sidel did not represent Mother again until November 2008 (which occurred after the court had reappointed Sidel in its October 31 judgment) when she filed the post-trial motion on Mother's behalf. Thus, Mother was effectively without representation for the bulk of the TPR proceedings, including at the crucial termination hearing on September 16, 2008.[4]

---

3. Thus, there is no dispute that Mother is indigent, as required by section 211.462.2. Mother's financial form that she submitted to the court on October 21, 2008 further confirms this fact.

4. The record is silent as to whether Mother attended the hearing on August 12, 2008,

where the court granted a continuance on the TPR proceedings until September 16. The continuance order indicated that the hearing was being continued due to lack of service on the putative fathers and made no mention of Mother's whereabouts or status.

The record reveals that Mother requested counsel via her letters to the court on October 21, 2008 and November 24, 2008, both after the TPR hearing. However, Mother also alleged in her post-trial motion and again in her brief that she requested counsel from Huber before the TPR hearing and that Huber did not provide the proper paperwork to enable Mother to make her request to the court in a timely manner.

Several Missouri cases provide guidance on the issue of the right to counsel in TPR proceedings. In *B.L.E. v. Elmore*, 723 S.W.2d 917 (Mo.App. W.D.1987), the court held that the trial court's failure to obtain counsel for the mother in the given circumstances constituted reversible error. *Id.* at 920. The mother in *B.L.E.* was incarcerated and, though she had repeatedly expressed her desire for an attorney, she did not receive the statutorily-required notice of her right to counsel until two days before the hearing. *Id.* at 919.

Even though the mother in *B.L.E.* appeared at the hearing and testified, the trial court held that her due process rights had been violated. *Id.* at 920. The B.L.E. Court stated that "[a] parent must make a clear and unequivocal waiver on the record of his or her decision to proceed to trial without a court appointed attorney." *Id.* The mother, according to the court, "obviously wanted an attorney, and it was incumbent upon the *court* to either appoint counsel or obtain an affirmative waiver of her right to counsel." *Id.* (emphasis in original).

Our courts have also addressed the proper application of section 211.462 in the context of a court-appointed attorney's motion to withdraw. Missouri courts have permitted court-appointed attorneys to withdraw in termination of parental rights cases without appointing new counsel. *P.D.*, 144 S.W.3d at 912 (citing *I.B.*, 48

S.W.3d at 97); *In the Interest of K.D.H.*, 871 S.W.2d 651, 654–56 (Mo.App. W.D. 1994) (overruled on other grounds by *In re B.J.K.*, 197 S.W.3d 237 (Mo.App. W.D. 2006)). However, attorneys in such cases have typically notified clients of their intent to withdraw at least several weeks before the termination hearing. *See P.D.*, 144 S.W.3d at 912 (citing *K.D.H.*, 871 S.W.2d at 654–56). More importantly, these cases often involve a client who has repeatedly failed to cooperate with his or her attorney. *P.D.*, 144 S.W.3d at 912. When a client refuses to communicate with his or her attorney, misses meetings repeatedly, and displays general intransigence, courts have held that a parent has "rejected" his or her right to court-appointed counsel. *See Id.* (citing *I.B.*, 48 S.W.3d at 97–99; *K.D.H.*, 871 S.W.2d at 654–55).

The record contains no evidence to suggest that Mother unequivocally waived her right to counsel or rejected her court-appointed attorney. Like the court in *B.L.E.*, we believe that the trial court was obligated to provide court-appointed counsel for Mother, or to obtain her affirmative waiver of that right. While the court apparently appointed counsel for Mother at the inception of the proceedings, the court effectively eviscerated her right to counsel when it allowed Mother to proceed through the process unrepresented, and especially when it held the TPR hearing in both Mother's and counsel's absence. At no time did the court make an inquiry or even an entry on the record concerning Mother's lack of representation at the multiple proceedings that took place subsequent to the initial adjudication.

Furthermore, Mother's interest in the case was clear. She attended five permanency hearings and presumably missed only those that took place during her incarceration. Mother also wrote to the

court on two occasions, albeit in an untimely fashion, and expressed her concerns about the case and her desire both for counsel and to have her son returned to her.

■ "The circumstances of a particular case hold great weight in determining whether an indigent parent was unjustly denied the right to counsel in termination of parental rights proceedings." *In Interest of F.L.M.*, 839 S.W.2d 367, 374 (Mo. App. E.D.1992) (citing *B.L.E.*, 723 S.W.2d at 920). Even the Supreme Court of the United States has acknowledged that TPR cases present facts and circumstances "susceptible of almost infinite variation," and therefore "[i]t is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements." *Lassiter v. Dep't of Soc. Servs. of Durham County, N.C.*, 452 U.S. 18, 32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 788, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)).

Furthermore, we must remain mindful of the awesome power the court exercises in terminating parental rights. *See K.A.W.*, 133 S.W.3d at 12 (characterizing termination of parental rights as akin to a "civil death penalty.").

While we recognize that Mother did not act with the utmost diligence in safeguarding her parental rights, she also did not affirmatively waive those rights or reject her counsel. Mother did not represent herself, nor was she represented by counsel at the hearing. As such, there was no one even to request a continuance on Mother's behalf. Despite Mother's and counsel's conspicuous absences, the trial court nevertheless proceeded to hear the case on the merits and made only a passing mention of Mother's absence.[5]

A parent's absence alone renders counsel's duty more difficult to fulfill and heightens the need for effective assistance of counsel. *In re J.M.B.*, 939 S.W.2d 53, 56 (Mo.App. E.D.1997). Here, both Mother and her court-appointed counsel were absent. Given these circumstances, and the fact that Mother had largely participated in the proceedings leading up to the hearing, we believe that the trial court's decision to hold the TPR hearing without Mother or her counsel present violated Mother's due process rights and section 211.462. Point granted.

### III. CONCLUSION

The judgment of the trial court terminating Mother's parental rights in J.S.W. is reversed and remanded for a new trial. On remand, the trial court is directed to appoint an attorney for Mother if she does not already have one, or to obtain from Mother a valid waiver of her right to a court-appointed attorney.

KURT S. ODENWALD, P.J., and GEORGE W. DRAPER III, J., concur.

---

5. The trial court's one reference to Mother's absence from the hearing is as follows: "[t]he record should reflect that this matter was on the Court's docket today for 9:00 in the morning. It is now noon time. The Court apologizes, and the Court doesn't see any of the parents here. So I just—anyway, with that you can proceed."